UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
FILE NO.:  3:20-cv-250

| | | |
|---|---|---|
| JAMIE ALLEN, MELANIE DYER, NATHAN DAVENPORT, KATRINA LEDFORD,  AMANDA TIMPSON SAMANTHA TORRES, JESSICA FARQUHAR JEREMY SILVERS, LIBBY HELMS, TESSA DORSEY (SIMONS), STEPHEN DOWNEY, SHERRY GARLAND, REGINA MANEY, TIENDA ROSE PHILLIPS, STEPHEN ASHE, SARAH CRAPSE, KELLEY WALKER, SHEENA DOCKERY, CAINE BURNETTE, DESIREE REILLY, SHALEES GREENLEE, DESEAN (AMIR) PATTERSON, MARTHA KILLIAN, ERNIE CARTER, DESMOND CHAMPAGNE, CHEYENNE SPICOLA HANNAH ALLEN, PATRICIA SIMONDS, Each on their own behalf, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| and | ) ) | |
| P.A, G.A, J.A., M.D., C.D., K.D, C.A., L.T., A.D., M.C., A.C., J.S., S.W., V.W., J.D., A.R., J.B., D.S., A.H., J.H., C.L., K.L, L.R., Z.A., E.M., P.M., Z.B., A.B., T.P., J.G., T.G., Da.P., De.P., B.S., Dam.W., Dar.W., K.C., M.C. | ) ) ) ) ) | 2ND AMENDED COMPLAINT (JURY TRIAL DEMANDED) |
| By and through their GUARDIAN AD LITEM, JOY McIVER | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| CHEROKEE COUNTY; SCOTT LINDSAY, in both his individual capacity and official capacity as DSS attorney for Cherokee County; CINDY PALMER, in both her individual capacity and official capacity as Director of the Cherokee County Department of Social Services; DONNA CRAWFORD, in her Official capacity as Director, of Cherokee County Department of Social Services; and LISA DAVIS, in her Official capacity as Director of Cherokee County Department of Social Services, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

NOW COME the Plaintiffs, by and through undersigned counsel, with the consent of the Defendants under Rule 15(a) of the Federal Rules of Civil Procedure, and file this Second

Amended Complaint[1] prior to filing of any responsive pleading by a Defendant. This action alleges the following Claims for Relief seeking recovery of damages and for injuries incurred as a proximate cause of the acts and omissions of Defendants arising from the conduct of the Defendants in their official and individual capacities, as described more particularly in this Complaint:

## INTRODUCTION

1. Plaintiffs are parents and children from several families, who at the time of these events, were located in Cherokee County, NC. They were victims of a scheme undertaken by Defendants and their agents leading to multiple events, transactions and occurrences, referenced and described in this Complaint, involving the unlawful taking of minor children by the Defendants. Defendants' conduct violated state and federal law, policy, and the constitutional rights of both parents and their children.

2. Defendants illegally took minor children from the custody of their biological parents using a variety of unlawful documents titled Custody and Visitation Agreements (hereinafter "CVA"), Powers of Attorney (hereinafter "POA"), Family Safety Agreements (hereinafter "FSA"), Safety Plans, and other similarly substantive documents and agreements (all of which are referred to herein collectively as CVAs). The Defendants were the creators of these unlawful documents and were the only ones to use them in the state of North Carolina.

3. These alternative removal mechanisms were designed to, and did in fact, avoid Court time and judicial oversight in violation of the statutory process to remove children from their parents' custody. They were also designed to reduce costs for social services in to Cherokee County's budget for the Department of Social Services ("DSS").

4. Plaintiffs were at one time intact families. However, due to Defendants' conduct, their families were shattered when Defendants removed children from their homes without affording Plaintiffs the statutory and constitutional protections to which they were entitled. Plaintiffs were injured by the Defendants' illegal and unconstitutional practices and policies of using CVAs and similar documents and processes.

5. Copies of pertinent documents are provided as exhibits herein.

---

[1] Plaintiffs adopt and incorporate by reference their Exhibits, which have been previously filed with Court, see Doc. 1-1, as though fully set forth herein.

6. Some of the Plaintiffs never saw their children again after signing the document. Some of the Plaintiffs have sporadic contact with their children.

7. Some of the Plaintiffs have regained possession of their children after removal.

8. As of the date of this filing, Defendants Palmer, Hughes and Lindsay have been charged with crimes for acts that occurred during their employment with CCDSS involving CVAs.

9. Defendant Palmer was terminated as director, but was immediately re-hired. She is currently the business director for CCDSS. Despite the criminal indictments and findings by NCDHHS after the use of the CVAs was discovered, Cherokee County continues to employ Palmer as of the date of this filing.

10. In 2018, NCDHHS requested Cherokee County to audit 7,000-plus DSS files to determine with certainty what happened in every child's case. As of the date of this filing, Cherokee County refuses to comply with this request. As a result, the whereabouts and welfare of many children are still unknown.

## PARTIES AND JURISDICTION

11. Parents Jamie Allen and Melanie Dyer are parents of P. A., G.A., and J.A.

12. Parents Nathan Davenport and Melanie Dyer are parents of M.D.

13. Parents Nathan Davenport and Katrina Ledford are parents of C.D. and K.D.

14. Parent Jeremy Silvers is the parent of D.S.

15. Parent Libby Helms is the parent of A.H. and J.H.

16. Parent Amanda Timpson is the parent of L.T.

17. Parent Regina Maney is the parent of K.C., M.C., E.M. and P.M.

18. Parent Sheena Dockery is the parent of Z.B.

19. Parent Caine Burnette is the parent of A.B and J.B..

20. Parent Desiree Reilly and Desean Patterson are the parents of T.P. and Da.P., De.P.

21. Parent Martha Killian is the parent of B.S.

22. Parents Stephen Downey and Sherry Garland are the parents of A.D.

23. Parents Tienda Rose Phillips and Stephen Ashe are the parents of C.A.

24. Parent Sarah Crapse is the parent of M.C. and A.C.

25. Parent Kelley Walker (a/k/a/ Kelley Cambell) is the parent of J.S., S.W., V.W.

26. Parent Shalees Greenlee is the parent of A.M. (aka A.R.), is the biological parent of A.M.

27. Parents Hannah Allen and Desmond Champagne are the parents of Z.A.

28. Parent Samantha Torres is the parent of C.L. and K.L.

29. Parent Patricia Simonds is parent of L.R.

30. Parent Tessa Dorsey is parent of j.D.

31. Parent Jessica Farquhar is the parent of Dam.W., Dar.W.

32. Parent Cheyenne Spicola is the parent of J.G. and T.G.

33. The above named plaintiffs are citizens and residents of North Carolina unless otherwise specified below.

34. Joy McIver has been appointed as the guardian ad litem for all of the minor children.

35. McIver, on behalf of these children, brings this action for damages and redress of harms suffered by Child Plaintiffs, who have been damaged and harmed as the result of like conduct by all named Defendants and other Department of Social Services employees of Cherokee County, who are state/government actors as defined by law.

36. Defendant Cindy Palmer (hereinafter "Palmer") was, at all relevant times, an agent or employee of Cherokee County who was employed as either a Social Worker or Business Manager or the Director of Social Services. Defendant Palmer at all times relevant has been a health and community worker.

    a. Defendant Palmer was the Director of Social Services for Cherokee County on an interim basis from November 30, 2009 until July 2010, and again from August 1, 2015 until March 23, 2016. Palmer was the permanent Director of Social Services from March 23, 2016 until June 11, 2018. Defendant Palmer was also a Social Worker in 2004-2006 for Cherokee County DSS.

    b. Defendant Palmer has been, at all relevant times, an agent or employee of Cherokee County and a health and community worker.

    c. Defendant Palmer, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as they pertain to her duties as Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes.

    d. Defendant Palmer was not lawfully qualified to be the Director when she was appointed to that position. Cherokee County sought and obtained a waiver from NCDHHS for her appointment.

37. Defendant Donna Crawford (hereinafter "Crawford") was, at all relevant times, the Director of Social Services for Cherokee County and was an agent or employee of Cherokee County at those relevant times.

    a. Defendant Crawford was a health and community worker at those relevant times.

    b. Defendant Crawford was the permanent Director of Social Services for Cherokee County from July 26, 2010 through July 31, 2015.

    c. Defendant Crawford, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as they pertain to her duties as Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes.

38. Defendant Lisa Davis (hereinafter "Davis") was, at relevant times, the Director of Social Services for Cherokee County and was an agent or employee of Cherokee County at those relevant times.

    a. Defendant Davis was a health and community worker at those relevant times.

    b. Defendant Davis was the permanent Director of Social Services for Cherokee County from January 5, 1995 through November 29, 2009.

    c. Defendant Davis, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as the pertain to her duties as Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes.

    d. Defendant Scott Lindsay served as DSS staff Attorney for this Director and used CVAs, FSAs, Safety Plans and other similar documents during the time and tenure of this director.

39. Defendants Palmer, Crawford, and Davis, held, during the times aforementioned, a public office created by state statute whereby they exercised a position of power and discretion, as allowed by law as set forth in N.C. Gen. Stat. § 7B-100 *et. seq* and Chapter 108A of the North Carolina General Statutes.

40. Defendants Palmer, Crawford, and Davis were trained in the rules, regulations, policies and procedures of the Department of Social Services as promulgated by the NCDHHS and the associated laws of the state of North Carolina after assuming their responsibilities and duties.

41. Defendants Palmer, Crawford, and Davis exercised personal and professional deliberation, made decisions and exercised personal and professional judgment as set forth herein.

42. Defendants Palmer, Crawford, and Davis, as Directors of Social Services for Cherokee County, had both the authority and responsibility to set policies and practices for Cherokee County related to the County's obligation under state law to provide social services, including those complained of in this action.

43. As Cherokee County's Directors of Social Services, Defendants Palmer, Crawford, and Davis had a duty to their office to, at all times, act in the best interest of each minor child over whom the County exercises its social services powers and to follow the law regarding placement of minors in the care of persons other than their biological parents.

44. Defendants Palmer, Crawford, and Davis were official policy makers for Cherokee County as set forth by North Carolina law.

45. Defendants Palmer, Crawford, and Davis were public officers as defined by applicable law, including the law of North Carolina.

46. Defendant Scott Lindsay served as DSS staff Attorney during all times relevant to this lawsuit and used CVAs, FSAs, Safety Plans, and other similar documents during the respective tenures of Palmer, Crawford and Davis as Directors of Cherokee County DSS.

47. Defendant Cherokee County (hereinafter "Cherokee County") is a political subdivision of the State of North Carolina, organized and governed by the laws of the State of North Carolina.

48. Defendant Lindsay is a citizen and resident of Cherokee County, North Carolina.

49. Defendant Palmer is a citizen and resident of Cherokee County, North Carolina.

50. Defendant Crawford is a citizen and resident of Cherokee County, North Carolina.

51. Defendant Davis is a citizen and resident of Cherokee County, North Carolina.

52. The unlawful acts and/or omissions which are the subject of this action took place in Cherokee County, North Carolina.

53. This action was originally filed in the District Court Division of the North Carolina General Court of Justice, Cherokee County being the proper venue pursuant to N.C. Gen. Stat. §§ 1-77 and 1-82.

54. Defendants elected to remove this action to this Court, as most of the conduct giving rise to the claims for relief arose within the Western District and the named Defendants and many of the named Plaintiffs are residents and citizens of the Western District of North Carolina, venue is appropriate in this Court for the removed action.

55. This action was originally filed in the District Court Division of the North Carolina General Court of Justice, claiming an amount in controversy exceeds $25,000.00, and therefore while the Superior Court would be the proper division of the General Court of Justice for trial pursuant to N.C. Gen. Stat. § 7A-243, because this action also seeks a determination of the legal status of minor children, including their placement, the District Court division has exclusive, original jurisdiction over this matter. *See, inter alia,* N.C. Gen. Stat. § 7B-200 and *generally* N.C. Gen. Stat. § 50-1 *et seq.*

56. Defendants elected to remove this action to this Court, alleging this Court's jurisdiction over a federal question under 28 U.S.C. § 1331.

57. Defendants further asserted this Court's supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

58. Defendants are not entitled to absolute, prosecutorial, or governmental immunity because, *inter alia*, the actions complained of herein were not undertaken during the process of prosecuting any claim of abuse, neglect, or dependency in a proceeding before the District Court of Cherokee County, North Carolina or another Court similarly situated.

59. Defendants have waived any governmental immunity that may arguably apply, pursuant to N.C. Gen. Stat. § 153A-435 by the purchase of insurance and/or participation in the North Carolina Association of County Commissioners Risk Management Pool, which provides coverage for the acts and omissions alleged against the Defendants herein.

60. Defendant Cherokee County also has a cash reserve that is liable for any damages arising from the conduct set forth herein.

61. Each claim for relief against each individual defendant, their predecessors, and other employees of Cherokee County is brought against that Defendant in both his/her individual and official capacities, based on the applicable time period unless otherwise specified below.

62. The identities of all persons who are or have been social workers, supervisors, health and community workers, and others who took part in, were involved in, or had knowledge of

the process of removing minor children from proper custodial parents without lawful authority and in derogation of the rights and privileges of those parents and minor children, have yet to be identified. However, those persons will be identified through discovery and the determination of the merits of this action. Plaintiffs reserve their right to amend this Complaint to add those persons as Defendants to this case as they become known.

63. Upon information and belief, Defendants have made no effort to provide services to the minor children since they were placed with their individual respective placements.

64. Each Defendant, both those known and yet to be identified through discovery in this action, committed the acts complained of herein while acting in both their individual and official capacities.

### FACTS RELEVANT TO EACH SPECIFIC PLANTIFF/FAMILY

65. Parents Jamie Allen and Melanie Dyer are the parents of P. A., G.A., and J.A.:

    a. In 2016, P.,A., G.A. and J.A. were removed from their parents' custody by CCDSS. The parents were coerced into signing a CVA that illegally placed the children with their maternal grandparents.

    b. Upon information and belief, the CVA was presented to the parents by social workers Smith and Johnson. Defendant Lindsay drafted and/or approved the use of the CVA.

    c. The grandparents have severely limited contact between the parents and the children.

    d. These children still reside in N.C.

    e. Upon information and belief, Defendants have made no effort to provide services to them since they were placed with the maternal grandparents.

    f. The parents were not aware that the CVAs were unlawful until 2018.

66. Parents Hannah Allen and Desmond Champagne are the parents of Z.A.:

    a. Child was placed with relatives pursuant to a CVA in 2016.

    b. Removed by SW Smith and Johnson approved by Defendant Lindsay.

    c. Parent Allen has visitation with the minor child.

    d. Parents learned CVAs were unlawful in 2018.

67. Parent Caine Burnette is the parent of A.B. and J.B.:

a. Children placed with maternal uncle by a CVA in 2016.

b. Minor child A.B. was 17 months old and is now 5.

c. Minor child J.B. was an infant and is now 4.

d. Social Workers involved were Johnson and Hughes with approval by Defendant Lindsay.

e. Parent learned CVAs were unlawful in 2018.

68. Parent Sarah Crapse is the parent of A.C. and M.C.:

a. Children were placed with Grandparents pursuant to a CVA in 2017.

b. Upon information and belief, there was a prior non-legal guardianship type document as it relates to these minor children.

c. Removed by SW Smith and Johnson approved by Defendant Lindsay.

d. There is currently pending Court action by Clay County DSS.

e. Parent learned removal was unlawful in 2018.

69. Parents Nathan Davenport and Melanie Dyer are the parents of M.D.:

a. Child was placed with family members pursuant to a CVA at birth in 2017.

b. M.D. was removed by SW Hughes with the approval of Defendant Lindsay from his mother at the Cherokee County hospital while she was under the influence of prescribed medication.

c. Upon information and belief parents have not physically seen this child.

d. Child currently resides in Mitchell County, N.C..

e. Parents learned removal was unlawful in 2018.

70. Parents Nathan Davenport and Katrina Ledford are the parents of C.D. and K.D.:

a. Children were removed in 2015 and placed with family. CVA signed in 2016. Oldest placed out of state in Georgia and is now over the age of 18. Youngest placed with family in North Carolina.

b. Removed by SWs Smith, Myers, Hensley, Johnson and approved by Defendant Lindsay.

c. Parents learned CVAs were unlawful in 2018.

71. Parents Sheena Dockery is the parent of Z.B.:

a. Child was placed with Grandmother pursuant to a CVA in 2016.

b. Parent now has care, custody and control of the minor child.

    c. Removed by SWs and approved by Defendant Lindsay.

    d. Parent learned CVAs were unlawful in 2018.

72. Parents Tessa Dorsey is the parent of J.D.;

    a. Child was placed with Preston and Missy Allen pursuant to a CVA in approximately 2008/09.

    b. Minor child is now over the age of 18.

    c. Removed by SW Stephanie Mikeon and Donna Pendergrass and approved by Defendant Lindsay.

    d. Told CVA would last until child turned 18 and Child would be placed in foster care if she didn't sign it. She was told services were not an option.

    e. Parent learned CVAs were unlawful in 2018.

73. Parents Wade Walters and Jessica Farquhar is the parent of Dam.W., Dar.W.:

    a. 1 Child each was placed with Charles and Annette Shook and Andy and Aneka Shook(James).

    b. CVA was utilized by CCDSS in 2009.

    c. Possible legal adoption occurred in July 2018.

    d. Removal approved by Defendant Lindsay.

    e. Parent learned removal was unlawful in 2018.

74. Parents Stephen Downey and Sherry Garland is the parent A.D.:

    a. Child was placed with Grandparents pursuant to a CVA in 2016.

    b. Parents currently have contact with the minor child.

    c. Removed by SW's Myers, Bernier and approved by Defendant Lindsay.

    d. Parents learned removal was unlawful in 2018.

75. Parent Shalees Greenlee is the parent of A.M. (aka A.R.):

    a. Children were placed with Grandparents pursuant to a CVA in 2016.

    b. CVA refers to this minor child as Alana Roberts.

    c. Removed by SW Smith, Johnson and Hughes and approved by Defendant Lindsay.

    d. Parent has visitation of this minor child as of 3/2018.

    e. Parent learned removal was unlawful in 2018.

f. Social Worker David Hughes, went to Greenlee's home on November 23, 2016, with the same CVA that Greenlee had previously refused to sign.

g. At all times relevant to this Complaint, David Hughes was a health and community worker and a Social Services employee and agent of Cherokee County.

h. Even though Greenlee had refused to sign the CVA previously, Hughes used false, threatening, coercive, and oppressive statements and omissions to overcome Greenlee's free will, and she signed the CVA as a result of coercion and duress.

i. Hughes' false statements and omissions included:

    i. That the CVA was a binding legal document.

    ii. That the CVA would not completely bar her from visitation.

    iii. Failing to inform her that in a DSS Court proceeding, Greenlee would have had a right to counsel, and that DSS is required by law to attempt to reunify parents who have lost custody of the children in a DSS proceeding

    iv. Such other and further false statements and omissions as may become evident through discovery and trial of this action.

j. At no time relevant was any well-being or other follow-up was provided by social services employees of Cherokee County.

76. Parent Libby Helms is the parent of A.H. and J.H.:

a. Children were placed with maternal uncle pursuant to a CVA in 2014.

b. Removed by SWs Johnson, McCabe, Smith and approval of Defendant Lindsay.

c. Parent currently in custody in Cherokee County jail. Children reside in Cherokee County.

d. Parent learned removal was unlawful in 2018.

77. Parent Martha Killian is the parent of B.S.:

a. Child was placed with family pursuant to a CVA in 2016.

b. Child is now over the age of 18.

c. Removed by SW Myers and was approved by Defendant Lindsay.

d. Parent learned removal was unlawful in 2018.

78. Parent Regina Maney and Ernie Carter are the parent of K.C., M.C., E.M. and P.M.:

    a. Children K.C. and M.C. (Ernie Carter is not the father of E.M. or P.M.) were removed via a non-legal POA/guardianship in 2005 and placed with Mary Scissom.

        i. SWs who removed K.C. and M.C. were Donna Pendergrass and Cindy Palmer.

        ii. K.C. is 18 as of the filing of this complaint.

        iii. M.C. is 20 as of the filing of this complaint.

        iv. No North Carolina statutory guidelines were followed as it related to the POA or guardianship.

        v. Social Workers were acting in their capacity as agents of the Director and Cherokee County at the time of their conduct.

        vi. Children did not see their mother since 2007.

    b. Children E.M. and P.M., were placed with Aunt and Uncle pursuant to a CVA in 2017.

    c. Upon information and belief, there was prior Court involvement in 2013 involving E.M..

    d. E.M. and P.M. were removed by SW Hughes and approved by Defendant Lindsay.

    e. Children are currently in the state of N.C.

    f. Upon information and belief, parent has had no contact with child.

    g. Parent learned removal was unlawful in 2018.

79. Parents Tienda Rose Phillips and Stephen Ashe are the parents of C.A.:

    a. Children were placed with Grandparents pursuant to a CVA in 2017.

    b. C.A. was removed by SWs Smith, Hensley and Johnson and approved by Defendant Lindsay.

    c. Children returned to parent Phillips 5/2018.

    d. During this process Social workers on behalf of the Defendants made a number of threatening and coercive statements to Phillips, including:

    e. If Plaintiff Phillips refused to sign the CVA, Social Services employees of Cherokee County would put C.A. in a foster home.

    f. If Kelly Phillips took C.A. to North Dakota without signing the CVA, that she

would be charged with the crime of kidnapping C.A.

    g.   Such other and further false statements and omissions as may become evident through discovery and trial of this action.

    h.   Parent learned removal was unlawful in 2018.

80. Parents Desiree Reilly and Desean Patterson are the parents of Da.P., T.P. and De.P.:

    a.   Children were placed with family members pursuant to a POA in 11/2014 and CVA in 11/2014 and a POA.

    b.   Children were removed by Social Workers their removal was approved by defendant Lindsay.

    c.   The parents now have these minor children back in their care, custody and control.

    d.   Parents learned CVAs were unlawful in 2018.

81. Parent Jeremy Silvers is the parent of D.S.:

    a.   Child was placed with Great Aunt pursuant to a CVA in 2014.

    b.   Removed by SW Hughes and approved by Defendant Lindsay.

    c.   Child has been returned to this parent.

    d.   Parent learned removal was unlawful in 2018.

82. Parent Patricia Simonds is the parent of L.R.:

    a.   Child was placed with her sister pursuant to a TSA in 2017 and then a CVA.

    b.   Removed by SW Courtney Myers and approved by Defendant Lindsay.

    c.   Child has been returned to this parent.

    d.   Child has sever anger issues.

    e.   Parent learned removal was unlawful in 2018.

83. Parent Samantha Torres is the parent of C.L. and K.L.:

    a.   Children were removed on or about the summer of 2010.

    b.   Removed by TSA/FSA.

    c.   Attorney Scott Lindsay in December of 2010 acted as a private attorney and cited the TSA/FSA and filed a complaint for custody 10 CVD 713 in Cherokee County whereby he represented the Lovingood family and obtained a Court Order against Samantha Torres.

  d. Attorney Scott Lindsay notarized Court documents in this matter that have questionable dates.

  e. Parent has contact with the minor children.

  f. Parent learned removal was unlawful in 2018.

84. Parent Amanda Timpson is the parent of L.T.:

  a. Child placed with family pursuant to a CVA in 2017.

  b. Removed by SW Myers and Defendant Lindsay.

  c. Parent has the minor child in her custody and control at this time.

  d. Parent learned removal was unlawful in 2018.

85. Parents Kelley Walker is the parent of J.S., S.W., V.W.:

  a. Children were placed with Grandparents pursuant to a CVA in 2017.

  b. Removed by SW Smith, Johnson and approved by Defendant Lindsay.

  c. Parent does not get to see minor children at this time.

  d. Parent learned removal was unlawful in 2018.

86. Parent Cheyenne Spicola is the parent of J.G. and T.G.

  a. Parent Cheyenne Spicola is the parent of J.G and T.G.

  b. Children are Joseph Gibby 11/26/2007 and Tesla Gibby 2/20/2013.

  c. Children were removed by way of a Family Service Agreement (FSA) signed 4/1/2014.

  d. Children were removed by SW Dianna Garrett and approved by Defendant Lindsay.

  e. SW Garrett threatened that children would be removed and placed in Foster care and that Plaintiff Spicola would not see her children if she didn't sign FSA.

  f. Plaintiff Spicola got children back in March of 2015.

  g. Children have been upset by entire process.

  h. No petition was ever filed in this matter, by the Defendants involving these minor children.

  i. Plaintiff did not learn removal was unlawful until 2018.

87. Plaintiffs incorporate by reference, and adopt in its entirety, all of the information enclosed in **Exhibit A**, which is a spreadsheet and corresponding CVAs setting forth the

information stated above for each plaintiff. The contents are incorporated as though fully set forth in the body of this Complaint.

88. Some parents incurred legal fees trying to get their children back, others tried to contact CCDSS and were told they had to hire private legal counsel and file Court papers.

89. Plaintiffs incorporate by reference, and adopt in their entireties, all of the information enclosed in **Exhibit B**, a set of flowcharts, which graphically depict the information stated above in a more reader friendly format. The contents are incorporated as though fully set forth in the body of this Complaint.

90. Upon information and belief, the Social Workers, supervisors and Directors cited above are not a precise list of all who were involved in the taking of each and every child, there may have been more,that will be determined through the discovery process.

91. Defendant Directors at all times cited above were responsible and accountable for all acts performed by all social workers, supervisors and Defendant Lindsay.

## FACTS GENERALLY RELEVANT TO PLAINTIFFS' CLAIMS FOR RELIEF

92. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as though fully set forth herein.

93. Defendant Scott Lindsay (hereinafter "Lindsay") has been at all relevant times, the attorney for Cherokee County DSS, an agent and employee of Cherokee County, and a Social Services employee of Cherokee County under the direct guidance and control of its Director.

94. Defendant Lindsay is a government actor as it relates to the allegations set forth herein.

95. Defendant Lindsay exercised personal and professional deliberation, made decisions and exercised personal and professional judgment as set forth herein.

96. Defendant Lindsay has been trained for more than 18 years in the rules, regulations, policies and procedures of the Department of Social Services as promulgated by the North Carolina Department of Health and Human Services ("NCDHHS") and the associated cases and laws of the state of North Carolina, the Constitution of the United States, and applicable federal laws, including corresponding federal cases and statutes.

    a. Defendant Lindsay, as an agent for Cherokee County and for the Director of the Department of Social Services, is statutorily obligated to act in the best interest of each minor child and to ensure each child's health and safety at all times when

acting in regard to Cherokee County (and its constituent Department of Social Services) and carrying out its duties.

b. Defendant Lindsay, as an agent for Cherokee County and for the Director of the Department of Social Services, is obligated to ensure the legal rights of each and every parent are protected at all times when a minor child is being removed from a parent's care, custody and control, by Cherokee County (and its constituent Department of Social Services).

c. He is obligated to follow all the laws of the State of North Carolina at all times.

d. He owes a duty, as the DSS Attorney for Cherokee County and as a Social Services employee of Cherokee County, operating with the authority of and at the direction of the County Director of Social Services, to act in accordance and conformity with all applicable state and federal laws, policies, and procedures toward all adults and children who are provided social services by Cherokee County and its Social Services employees.

97. Defendant Lindsay had been continuously employed as both the County Attorney and DSS Attorney for Cherokee County simultaneously for many years making in excess of a six-figure income from Cherokee County and the CCDSS.

98. Further, Defendant Lindsay has represented Cherokee County as DSS attorney and provided advice and guidance to the then-incumbent Directors of Social Services as the official policy makers for Cherokee County and Cherokee County's Social Services employees regarding all social services-related investigations and practices during all times relevant to the allegations contained within this Complaint.

99. Defendant Cindy Palmer (hereinafter "Palmer") was, at relevant times, the Director of Social Services for Cherokee County and has been an agent or employee of Cherokee County at all relevant times. Defendant Palmer is a health and community worker.

a. Defendant Palmer was the Director of Social Services for Cherokee County on an interim basis from November 30, 2009 until July 2010, and again from August 1, 2015 until March 23, 2016 and was the permanent Director of Social Services from March 23, 2016 until June 11, 2018.

b. Defendant Palmer has been, at all relevant times, an agent or employee of Cherokee County and a health and community worker.

    c. Defendant Palmer, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as they pertain to her duties as Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes and how to perform the duties of a Social Worker.

    d. Defendant Palmer was not lawfully qualified to be the Director and a waiver was sought for her appointment by Cherokee County.

    e. Defendant Scott Lindsay served as DSS staff Attorney for this Director and used the CVAs and other similar documents for these affected families during Palmer's tenure and during the tenure of the directors that preceded her.

100. Defendants Palmer, Crawford, and Davis , held, during the times aforementioned, a public office created by state statute whereby she/they exercised a position of power and discretion, as allowed by law as set forth in N.C. Gen. Stat. § 7B-100 *et. seq.* and Chapter 108A of the North Carolina General Statutes.

101. All persons who have held the position of Director of Social Services for Defendant Cherokee County during the times relevant to this Complaint are policy makers for the County, empowered to set social services policies for Cherokee County pursuant to Chapter 108A, 7B and other relevant North Carolina law.

102. Defendants Palmer, Crawford and Davis were trained in the rules, regulations, policies and procedures of the Department of Social Services as promulgated by the NCDHHS and the associated laws of the state of North Carolina after assuming their responsibilities and duties.

103. Defendants Palmer, Crawford and Davis, as the Director of Social Services for Cherokee County, exercised personal and professional deliberation, made decisions and exercised personal and professional judgment as set forth herein.

104. While a Director may rely on a Department attorney for advice, the Director, is the final policy maker for all policies and procedures established to govern the operations and activities for the Department of Social Services.

105. Defendants Palmer, Crawford and Davis, as Director of Social Services for Cherokee County, had both the authority and responsibility to set policies and practices for

Cherokee County related to the County's obligation under state law to provide social services, including those complained of in this action.

106. As Cherokee County's Director of Social Services, Defendants Palmer, Crawford and Davis had a duty of their office to, at all times, act in the best interest of each minor child over whom the County exercises its social services powers and to follow the law regarding placement of minors in the care of persons other than their biological parents including these minor children.

107. Defendants Palmer, Crawford and Davis were official policymakers for Cherokee County as created and set forth by North Carolina law.

108. Defendants Palmer, Crawford and Davis were public officers as defined by applicable law, including the law of North Carolina.

109. At this time, Plaintiffs are unaware of the identities of other persons who are or have been social workers, supervisors, health and community workers and others who took part in, were involved in or, had knowledge of the process by which the children were removed from their biological parents' custody without lawful authority.

110. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the law regarding placement of minors in the care of persons other than their biological parents.

111. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the applicable law, policy and procedure as it relates to the removal/taking and placement of minor children in the care of persons other than their biological parents.

112. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the applicable law, policy and

procedure to provide services as required by law to the biological parents, guardians and persons to whom minor children were sent.

113. At all relevant times, Cherokee County had a Social Services Board, which had oversight authority over the County's Department of Social Services.

    a. At all relevant times, at least one County Commissioner served on the County Board of Social Services and was aware, or should have been aware, of the conduct of Defendant Lindsay. At times relevant to this Complaint, upon information and belief, Dan Eichenbaum was the Commissioner assigned.

    b. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had a duty imposed by law to ensure that Social Services employees of the County complied with all applicable policies, procedures, and state and federal laws, including but not limited to, laws related to the taking of minor children from their parents, and to review records on a periodic basis as set forth by N.C. Gen. Stat. § 108A *et. seq*.

    c. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had actual knowledge, through an N.C. Dept. of Health and Human Services audit, that the Cherokee County Department of Social Services:

        i. Was grossly understaffed and underfunded;

        ii. Had an unacceptable social worker/open case ratio;

        iii. Was not being given adequate supervision by the director; and

        iv. Was otherwise failing to provide adequate social services in compliance with law and policy.

114. At all relevant times, Cherokee County, by and through its employees (including its Directors of Social Services) was aware, or should have been aware, of the Defendants' conduct, as described throughout this Complaint. As a direct and proximate result of their deliberate indifference that shocks the conscience, Cherokee County effected the loss and deprivations referenced in this Complaint through its policy, pattern, practice, and custom of unlawfully taking minor children by use of illegal documents which acted as alternative removal mechanisms to avoid court involvement and judicial oversight. Yet, Cherokee County did nothing to object or intervene.

115. The Defendants and the Social Services employees of Cherokee County, acting with the authority of and at the direction of the Defendants, at the times relevant, improperly billed local, state and/or federal government funding sources while engaging in the CVA process with these Plaintiffs.

116. Upon information and belief:

    a. The names of the documents and the specific mechanics of each used to accomplish the illegal taking of children from the biological parents or lawful court-appointed foster parent and to deprive biological parents of their rights to substantive and procedural due process has varied through the years.

    b. At various times, these documents used for the illegal takings, were referred to as "Custody and Visitation Agreements," "CVAs," "Custody Agreements," "Voluntary Placement Agreements," "VPAs," Powers of Attorney "POAs", Family Safety Agreements ("FSA"), Temporary Safety Agreements ("TSA"), Family Safety Plans ("FSP"), or such similar terms. Plaintiffs use the generic term "CVA" to encompass all such substantively similar documents or documents utilized to accomplish Defendants' unlawful objectives.

    c. Regardless of the title given to the document, the unlawful act was using the documents prepared by Social Services employees of the County to illegally take a child to which a biological parent retained his/her constitutional rights to custody and to deprive that parent of his/her rights to substantive and procedural due process.

    d. Courtney Myers, who previously worked for Cherokee County as a Social Worker for approximately three years, estimates that she or co-workers completed between 30 and 50 CVAs during their respective tenures.

    e. Upon information and belief, based on the above estimation, if the use of these documents by Child Protective Service Social Workers to effectuate illegal takings was calculated on average, and used over the time period from 1998 until 2017, the number of affected families and or children would be several hundred.

    f. Upon information and belief, despite a request from NCDHHS, Cherokee County refused to fund and conduct an audit of the nearly 7,000 DSS records to determine the whereabouts and welfare of all of the affected children.

g. As of the date of the filing of this complaint, Cherokee County continues to employ Defendant Palmer as the business manager of DSS, despite receiving reports from NCDHHS indicating concerns and Defendant Palmer being indicted by the State of North Carolina for actions she took in her role as Director of DSS.

117. Defendant Lindsay would communicate about the draft CVAs with Cherokee County Social Services employees to input the particular factual information.

a. For example, social workers Katie Brown, Laurel Smith, Joyce Bernier, and Courtney Myers, and other Social Services employees of Cherokee County would receive the draft CVA from Defendant Lindsay and input the information applicable to a particular case and send the draft CVA via email back to Defendant Lindsay for his approval. He would approve of them and return them accordingly.

b. All of the above-referenced social workers prepared similar agreements only with the approval of Defendant Lindsay and/or their social worker supervisor (whose authority is directly derived from and can only be exercised with the consent of the County Social Services Director) who were following the policies and guidance of the Director of Social Services for Cherokee County, at the time.

c. All knowledge of Defendant Lindsay, as well as the social workers and supervisors, are imputed to the Director of Social Services for Cherokee County at relevant times.

d. CVAs other similar documents were often used as Alternative Removal Mechanism when Defendant Lindsay did not feel the case was "serious enough" for Court involvement.

118. Upon information and belief, these CVAs, POAs, FSAs, Safety Plan or other similar documents were sent to and from Defendant Lindsay's Cherokee County-provided and private email addresses since 1999.

a. These CVAs, POAs, FSAs, Safety Plan or other similar documents have been used by Cherokee County Social Services employees and County Social Services directors to unlawfully take children from the lawful custody of a

parent and deprive the parent of substantive and procedural due process since 1999.

b. Ms. Brown, as well as several other social workers, did question the legality and validity of the CVAs to both the Defendant Lindsay and Cherokee County Directors of Social Services, including Palmer, Crawford and Davis .

c. Defendant Lindsay and/or social worker supervisors and/or Cherokee County Social Services Directors, including Palmer, Crawford and Davis , advised these social workers that the use of CVAs was legal and permissible.

d. Cherokee County, by and through its Director of Social Services and Social Services employees, utilized unlawful CVAs, POAs, FSAs, Safety Plan or other similar documents as alternative removal mechanisms, frequently.

e. Social Services employees of Cherokee County created and induced parents to enter into dozens, if not more (possibly several hundred) CVA's, POAs, FSAs, Safety Plans or other similar documents as alternative removal mechanisms -- all of which were created, effected, and enforced by Social Services employees of Cherokee County or the county Director of Social Services, or Defendant Lindsay.

f. No CVAs, POAs, FSAs, Safety Plan or other similar documents were done without the direct or indirect approval, guidance and participation of Defendant Lindsay and/or the then-incumbent or actual Cherokee County Director of Social Services, including Palmer, Crawford and/or Davis.

g. Some of these agreements have been placed in closed court files in the Cherokee County courthouse by Defendant Lindsay or Social Services employees of Cherokee County, while others were not. This placement was done at the direction of either a director, defendant Lindsay, DSS supervisor, or other employee with supervisory authority.

119. Defendant Palmer, the Cherokee County Director of Social Services, and persons who held the public office of Cherokee County Social Services Director prior to her (including Defendants Crawford and Davis) are and were aware of the CVAs, POAs, FSAs, Safety Plans and similar documents as alternative removal mechanisms and approved of them, both expressly and tacitly.

a. Use of the CVA's, POA's, FSAs, Safety Plans and substantively similar agreements to remove minor children from their parents without court involvement was an official policy of Cherokee County, implemented by Palmer, Crawford and/or Davis as the county Social Services Director.

b. The Director takes counsel and advice from her Attorney, supervisors and social workers, by statute and law, she is ultimately responsible and accountable for all of the policies and acts as it relates to each and every child Cherokee County DSS works with and removes from their biological parents.

c. The Director may not delegate to any other employee final responsibility for discharging her official duties.

d. The Director may hire employees to assist her in the performance of their duties, but remains liable and accountable for their conduct and actions.

e. Use of the CVA's, POA's, FSAs, Safety Plans and substantively similar agreements to remove minor children from their parents without court involvement was an accepted custom and practice of CCDSS, known to its policymakers and accepted and encouraged by the policymakers.

f. The practice of utilizing CVAs, POAs, FSAs, Safety Plan or other similar documents to remove minor children from their parents was so widespread and so obviously illegal that the failure of the Cherokee County Board of Commissioners or the Cherokee County Board of Social Services to exercise their statutory oversight authority and prevent or correct the unlawful actions of Cherokee County Social Services directors and employees constitutes deliberate indifference to the constitutional rights of the parents and children of Cherokee County.

g. On multiple occasions, the decision to proceed with a CVA or other similar document was made in consultation and agreement between the then-incumbent Director of Social Services (including Defendants Palmer, Crawford, and Davis) and Social Services employees of Cherokee County.

120. On multiple occasions, the decision to proceed with a CVA or other similar document was made in consultation between Defendant Lindsay and Social Services employees of Cherokee County during case review, case staffing, or other times.

a.  These documents were used to achieve Cherokee County's and its Social Services directors, employees, and Defendant Lindsay's goal of removing minor children from lawful custody when they lacked sufficient evidence or a legal basis to file a petition or seek non-secure custody of a minor child pursuant to N.C. Gen. Stat. § 7B-100 *et. seq.,*

b.  CVAs, POAs, FSAs, Safety Plans or other similar documents were used to interfere with parental relationships in cases in which Cherokee County, its Social Services Director (including Palmer, Crawford and Davis) and other Social Services employees and Defendant Lindsay knew such interference was not legally justified.

   i.  Moreover, CVAs and POAs and other similar documents were used to avoid judicial oversight into the activities of the Cherokee County Director of Social Services, other Social Services employees, and Defendant Lindsay.

   ii.  Further, CVAs and POAS and other similar documents were utilized to avoid scrutiny by the Court and to deprive the parents of their right to appointed counsel to advise them on such agreements.

c.  CVAs, POAs, FSAs, Safety Plan or other similar documents were used to avoid, and in fact did result in, Cherokee County not providing any follow-up care (including *inter alia* medical care) that Cherokee County is required to provide to children who are placed in an out-of-home placement, pursuant to N.C. Gen. Stat. § 7B-100 *et seq*.

d.  Upon information and belief, Palmer, Crawford, Davis and Lindsay received salary increases during applicable times as set forth herein.

e.  No Parent had counsel when presented with a CVA, POA, FSA, or substantively similar document.

121. No Parent was provided court-appointed counsel or informed of his/her right to consult counsel when presented with the CVA, POA, FSA or substantively similar document.

122. No Parent voluntarily signed the CVA, POA, FSA, or substantively similar document; the signatures were all obtained by means of deception, fraud, coercion, and duress.

123. No Social Services employee of Cherokee County informed any Parent that, in a DSS

Court proceeding in the North Carolina District Court, that Parent would have had the assistance of counsel, and that DSS is required by law to attempt to reunify parents who have lost custody of the children in a DSS proceeding.

124. These false, threatening, coercive, and oppressive statements and omissions overcame each Parent's free will, and he or she signed the CVA, POA, FSA, or substantively similar document under this duress.

125. Parents were deprived of their rights to substantive due process because Defendants unlawfully took the Minors and deprived Parents of their parental rights by means of the coercive and unlawful CVA.

126. Parents were deprived of their procedural rights to due process because Defendants' coercive and unlawful use of the CVA deprived Parents of a fair and meaningful opportunity to be heard by a court prior to losing their constitutional parental rights.

127. DHHS advised in a December 20, 2017, letter to all county directors of social services that "facilitating such private custody agreements without the oversight of the Court falls outside of both law and policy." A true and accurate copy of this letter has been filed with the Court. **Exhibit C.**

128. A child custody action and declaratory judgment action regarding Plaintiff Matthieu came on for hearing before the Honorable Tessa Sellers, District Court Judge presiding at the February 28, 2018 session of District Court in Cherokee County.

129. During the trial, Shalees Greenlee, Michael Mathieu, David Hughes, Cindy Palmer, and Scott Lindsay all testified. A copy of this trial transcript is attached as **EXHIBIT D** and incorporated by reference into this Complaint as though fully reproduced herein.

130. After hearing all the evidence presented, Judge Sellers entered an Order and found numerous facts, made numerous conclusions of law, and ruled that:

   a. The CVA signed by Greenlee is unlawful.

   b. The process of obtaining the CVA violated the constitutional rights of Greenlee.

   c. The CVA is the product of both actual and constructive fraud on behalf of the Cherokee County Department of Social Services, its agents and employees and Attorney Scott Lindsay and Director Cindy Palmer.

   d. The CVA signed by Greenlee and all other CVAs similar to and like this in form, content and structure created by Cherokee County Department of Social Services,

their agents or employees and Attorney Scott Lindsay are and shall be at all times void *ab initio*. A copy of Judge Sellers' order is attached as **EXHIBIT E** and incorporated by reference as if fully set forth herein.

131. District Court Judge Monica Leslie reported the use of the CVAs and the actions of the Cherokee County Department of Social Services and Defendant Lindsay to NCDHHS.

132. The District Court of North Carolina retains exclusive jurisdiction to determine the status of a minor child, the relationship between a minor child and a biological parent, whether a parent's rights should be terminated, the best interest of the minor child and other similar decisions involving children within the Courts.

133. The Defendants' conduct is the proximate cause of harm to the biological parents of children, who were unlawfully coerced into signing a CVAs, POAs, FSAs, Safety Plan or other similar documents.

134. The Defendants unlawfully coerced the Parents into surrendering custody of their minor children in violation of their constitutional rights.

    a. Several Parents were told their children would be placed in foster care if they did not sign the agreement.

    b. Several Parents were told they would not see their children again if they did not sign the agreement.

    c. Several parents were told they couldn't see their children until they turned 18.

    d. Several parents were told they could go to jail if they did not sign the agreement.

    e. CCDSS exerted unlawful pressure on each parent during the removal process.

122. The Defendants deprived the Parents of their constitutional rights to substantive due process of law through the CVAs and tactics employed to obtain the Adult Plaintiffs' signatures on the CVAs and similar documents.

123. The Defendants deprived the Parents of their constitutional rights to procedural due process of law through the CVAs and the tactics employed to obtain the Adult Plaintiffs' signatures on the CVAs and similar documents.

135. The Parent-Plaintiffs have a constitutionally protected liberty interest in a family unit.

136. The Child-Plaintiffs have a constitutionally protected liberty interest in a family unit.

137. The Parent-Plaintiffs have a constitutionally protected liberty interest in raising their

children.

138. The actions of the Defendants have wrought a substantial deprivation of these liberty interests without due process upon the Parent-Plaintiffs and Child-Plaintiffs.

139. The harm to all these Plaintiffs, both parents and children is ongoing, therefore, there is no end to their deprivation of liberty interest without due process.

140. The Defendants' conduct is the proximate cause of harm to the minor children who were unlawfully taken away from their biological parents by use of unlawful and coercive CVAs or substantively similar agreements.

    a. The Child Plaintiffs were unlawfully taken from the custody of their biological parents by the Defendants in violation of their constitutional rights.

    b. The Child Plaintiffs lost access to services that they are entitled to by law, had the Defendants used the proper procedures to remove them from their biological parents' custody in a DSS Court proceeding.

141. As a proximate cause of Defendants' conduct, the Plaintiffs have been damaged as follows:

    a. Parents have not been allowed to see, visit, care for, or otherwise interact with their children, who were unlawfully taken from them by use of the CVA's, POA's, FSAs, Safety Plans or other substantively similar agreements.

    b. Parents and Minors have endured suffering sadness, pain and emotional distress resulting from the use of the CVA's POA's, FSAs, Safety Plans or other substantively similar agreements.

    c. Parents have been denied the opportunity to provide care, love, and affection to Minors.

    d. Minors have lost the services, care, protection, and assistance of their Parents.

    e. Some minors have suffered physical, mental and emotional abuse and injuries while in the custody of persons selected by DSS to be their caretakers.

    f. Parents and Minors have both been deprived of and have endured lost society, companionship, comfort, guidance, kindly offices, and advice of each other respectively to their family.

    g. Minors have been deprived of medical care and other types of care and assistance that Cherokee County would have been required to provide under

N.C. Gen. Stat. § 7B-100 *et seq.* had the Minors been removed from their biological parents pursuant to law.

 h. Such other damages as may be proven at trial.

142. The parental/familial relationships between Parents and their Minor children have been interrupted, damaged, harmed and or destroyed due to the conduct of the Defendants.

143. Because each minor child plaintiff was taken from his/her parent outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, POA, FSA, or substantively similar document, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide had the lawful process of a court proceeding been undertaken. Therefore, each minor child plaintiff was separately and directly harmed by Defendants' unlawful taking of him/her from his his/her parents' legal custody by losing medical care and other beneficial services to which he would have been entitled.

 a. After the illegality of the CVA documents came to light in early 2018, NCDHHS took control of child protective services in Cherokee County.

 b. During that time, NCDHHS sent an investigator, Tamela Shook to, *inter alia*, investigate the status of the children unlawfully taken pursuant to the CVAs, POAs, FSAs, and substantively similar documents.

 c. Based upon information communicated to her by Defendant Cherokee County, Shook located many of the minor children who are plaintiffs in this action, and, on the instructions of Defendant Cherokee County, made assurances to the minor children that they would receive services to help them overcome the harms they had suffered as a result of their unlawful takings.

 d. As of the date of the filing of this Complaint, no defendant has provided any follow-up assistance or services to any of these minor children.

144. The names of the documents and the specific mechanics of each used to accomplish the illegal taking of children from the biological parents or lawful court-appointed custodians deprived the parents in this action of their rights to substantive and procedural due process has varied through the years. The District Court of North Carolina retains exclusive jurisdiction to determine the status of a minor child, the relationship between a minor child and a biological parent, whether a parent's rights should be terminated, the best

interest of the minor child and other similar decisions involving children within the Courts.

145. Each Plaintiff who was a parent whose child was taken by means of a CVA believed at the time of the taking that the CVA or other document was lawful.

146. The belief described in the preceding paragraph resulted from the material representations of the Defendants (or agents and employees authorized to speak on Defendants' behalf).

147. Defendants (or persons empowered to speak on their behalf and exercise their authority) failed to inform any Plaintiff who was a parent whose child was taken by means of a CVA of their statutory and constitutional rights, despite Defendants being obligated to follow the law and only act in a manner that protects the constitutional rights of parents and children. *See* N.C. Gen. Stat. § 7B-100.

148. At the time that any Plaintiff who was a parent whose child was taken by means of a CVA signed the CVA, that Plaintiff did not know that he or she had been hurt and that the Defendants (or persons empowered to speak on their behalf and exercise their authority) caused her injury.

149. Plaintiffs who were parents whose child was taken by means of a CVA became aware that Defendants' conduct was unlawful, at the earliest, when Judge Sellers declared all CVAs to be unconstitutional and illegal in March of 2018.

150. Only then were Parent Plaintiffs required to inquire about the details of negligence that are reasonably discoverable.

151. No parent Plaintiff would have had the means to know that Defendants had deceived them until Defendant Lindsay, acting within his course and scope of his employment as staff attorney for the Defendants, told the Court, there was no legal authority for the CVAs, in December of 2017.

152. At the time the CVAs were signed, Parent Plaintiffs unknowingly trusted the representations of the Defendants, including the representations of the Defendants that they and their agents were authorized by law to do what they did;

153. The Defendants, by way of their position, authority and power, represented to the Plaintiffs that the CVA was a legal document.

154. Parents would not have signed the CVAs and given up their child(ren) in that manner had they known it was illegal.

155. Parent Plaintiffs have been induced by Defendants' acts to believe that certain facts exist, and they rightfully relied and acted upon that belief to their detriment.

156. Each removal had separate facts individual to the event itself, at separate times and was done by separate workers. However, certain facts are common to each of the victims:

    a. The use of the CVA or similar document was approved by policy of the Cherokee County Director of Social Services during their respective tenures.

    b. In each instance, Scott Lindsay reviewed and approved the CVA or similar document.

    c. Each Parent-Plaintiff suffered the deprivation of their constitutional rights by the unlawful actions of the Defendants.

    d. Each time a Parent-Plaintiff was presented with a CVA or similar document, Defendants (or agents and employees thereof who were authorized to speak on behalf of and with the authority of Defendants) represented to the Parent-Plaintiff that the CVA was lawful and in conformity with the Parent-Plaintiff's constitutional rights.

    e. No Parent-Plaintiff was notified of his/her right to counsel during a removal or termination of parental rights proceeding under Chapter 7B of the North Carolina General Statutes.

    f. No Parent-Plaintiff had the assistance of counsel in dealing with the CVA presented by Defendants (or agents and employees thereof who were authorized to speak on behalf of and with the authority of Defendants).

    g. Each child suffered an identical base of damages, to wit emotional distress inherent to the breakup of a family unit, and then each child suffered differing amounts of additional damages as a direct and proximate cause of the removal.

157. Plaintiffs who were children taken from their lawful parents by use of a CVA were all minors, under the age of 18, at the time their rights were violated by Defendants.

158. Children who have now reached the age of 18 did not learn of the Defendants' illegal acts and unconstitutional acts until March of 2018 for the same reasons stated above.

### CLAIMS FOR RELIEF

### COUNT I: NEGLIGENCE

### (Against Lindsay in his individual and official capacities)

159. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

160. Defendant Lindsay was employed as the DSS attorney for Cherokee County for a period in excess of 18 years.

    a. At all times relevant, Defendant Lindsay was trained in the law as an attorney, licensed to practice law in North Carolina, as authorized by the North Carolina State Bar. At no time was Lindsay the final policymaker for Cherokee County Department of Social Services.

    b. At no time relevant was Defendant Lindsay ever in an attorney-client relationship with any of the Plaintiffs during the CVA process.

    c. At no time relevant did Defendant Lindsay or any other named Defendant execute a binding retainer agreement involving legal services for any of the Plaintiffs pursuant to the Rules of the North Carolina State Bar.

161. At all relevant times, Lindsay has improperly and without legal authority prepared CVAs, POAs, FSAs, Safety Plans and similar documents and obtained signatures from parents, either directly or indirectly, and made misrepresentations to accomplish the purpose of encouraging parents to sign the CVAs, POAs and similar documents for the purpose of removing children from the lawful parent/plaintiffs' care, custody, and control.

162. Upon information and belief, the use of CVAs and POAs, FSAs, Safety Plans and other similar documents by Cherokee County was approved of by either official policy, unofficial custom, or constituted an official, endorsed or accepted practice of Cherokee County, based on Lindsay's involvement with preparing these documents and encouraging DSS employees to use them.

163. Defendant Lindsay stated to the District Court of Cherokee County in December 2017 that he had personal knowledge of at least 20 CVAs.

164. Upon information and belief, Defendant Lindsay received, reviewed, and approved dozens, if not hundreds, of CVAs, POAs, FSAs, Safety Plans or other similar documents during his tenure as DSS attorney for Cherokee County over the course of nearly 20 years. These documents were either drafted by other Social Services employees of Cherokee County or by Lindsay himself.

165. Upon information and belief, Defendant Lindsay reviewed and approved the CVAs used to coerce these Parent-Plaintiffs to give up custody of their children.

166. Upon information and belief, Defendant Lindsay improperly used his position to influence the Cherokee County Directors of Social Services or her designees to NOT follow Chapter 7B of the North Carolina General Statutes in regard to abused, neglected, and dependent children of Cherokee County, as set forth herein.

167. Upon information and belief, when Defendant Lindsay was questioned by social workers, he represented that the use of CVAs was lawful.

168. Defendant Lindsay's conduct, as set forth throughout this Complaint, was in violation of the Plaintiffs' constitutional rights.

169. Pursuant to North Carolina law, Defendant Lindsay owed a duty to the Plaintiffs in this matter to render services and exercise the degree of care and or skill commonly applied and used by other DSS attorneys similarly trained with similar experience that a prudent, reputable attorney representing a Department of Social Services would have used when dealing with parents and children in similar circumstances as set forth herein.

170. Pursuant to North Carolina law, Defendant Lindsay failed to render services and exercise the degree of care and or skill commonly applied and used by other DSS attorneys similarly trained with similar experience that a prudent, reputable attorney representing a Department of Social Services would have used when dealing with parents and children in similar circumstances as set forth herein.

171. Pursuant to North Carolina law, Defendant Lindsay failed to exercise appropriate professional judgment and engaged in misconduct which is otherwise unreasonable under the circumstances as set forth herein.

172. As a direct and proximate cause of Defendant Lindsay's negligence, as set forth herein, the Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT II: NEGLIGENCE

**(Against Lindsay and Palmer, in their individual and official capacities and against Crawford and Davis in their official capacities)**

173. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

174. At all times relevant to the transactions and occurrences giving rise to the Complaint, the Social Services employees of Cherokee County received the training required by the State of North Carolina to be social workers at the Cherokee County Department of Social Services.

175. Upon information and belief, the use of CVAs and POAs, FSAs, Safety Plans and other similar documents by Cherokee County was approved of by either official policy, unofficial custom, or constituted an official, endorsed or accepted practice of Cherokee County.

176. North Carolina law imposes a duty on the respective named Defendants to act in accord with the constitutional rights of parents and children, including clearly stating that the provisions of Chapter 7B "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that *protect the constitutional rights of juveniles and parents* " N.C. Gen. Stat. § 7B-100(1) (emphasis added).

177. Upon information and belief, when Defendant Lindsay and the respective directors were questioned by social workers, they represented that the use of CVAs was lawful.

178. Upon information and belief, Defendant Directors received training from the North Carolina Department of Health and Human Services on the proper procedures for child removal pursuant to N.C. Gen. Stat. § 7B-100 *et. seq*.

179. Defendant Directors owed a duty to the Plaintiffs in this matter to render services and exercise the degree of care and or skill commonly applied and used by other County Directors of Social Services similarly trained with similar experience that a prudent Director of Social Services for a county would have used when dealing with parents and children in similar circumstances as set forth herein.

180. Defendant Directors acted with deliberate indifference to such training, the law, the rights of the Plaintiffs, and in other ways yet to be discovered through discovery.

181. Defendant Directors acted with deliberate indifference to such training, the law to a level that shocks the conscience and violated the Plaintiffs' constitutionally protected rights.

182. There is a written manual promulgated by NCDHHS setting forth written instructions for county Departments of Social Services on the proper and lawful methods to remove

children from the custody of their biological parents pursuant to N.C. Gen. Stat. § 7B-100 *et seq.*

183. On multiple occasions, the Cherokee County DSS was audited by the NCDHHS, including reviewing files involving the removal of minor children from their biological parents.

    a. Upon information and belief, the CVA process was not discussed with or approved by NCDHHS or the State of North Carolina.

    b. Upon information and belief, the CVA documents were not shown to or disclosed to the state inspectors.

    c. Upon information and belief, the Defendants took affirmative steps to hide the CVAs and the process for obtaining CVAs from the state inspectors from NCDHHS.

    d. Alternatively, the Defendants negligently failed to inform NCDHHS officials about the CVAs and the process for obtaining CVAs.

184. At all times, Palmer, Davis and Crawford knew or should have known that using CVAs to remove children from their biological parents was not an accepted practice and would not have been approved by NCDHHS.

185. At all times, Defendant Lindsay knew or should have known that using CVAs to remove children from their biological parents was not an accepted practice and would not have been approved by NCDHHS.

186. Defendant Directors was negligent in using the CVAs to deprive Plaintiffs of a relationship with each other.

187. As a direct and proximate cause of Defendants' negligence, as set forth herein, the Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT III: GROSS NEGLIGENCE

### (Against Lindsay and Palmer, in their individual and official capacities and against Crawford and Davis in their official capacities)

188. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

189. The Defendants owed a duty to the Plaintiffs in this matter and those similarly situated to render services and exercise the degree of care and or skill commonly applied and

used by other County Directors of Social Services and their attorney, similarly trained with similar experience that a prudent Director and/or County DSS attorney would have used when dealing with parents and children in similar circumstances as set forth herein.

190. Defendants, by their conduct as described in this Complaint, acted in reckless disregard of, or wanton indifference to, the rights of the Plaintiffs.

191. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

192. Defendants' gross and utter failure to take care to follow the constitutional and statutory mandates regarding the removal of children from their biological parents as described throughout this Complaint over a period of many years clearly demonstrates deliberate indifference to the rights of the Plaintiffs and constitutes willful and wanton conduct.

193. As a result of this gross failure to exercise their duty of care, Defendants' use of the CVA to remove the Plaintiff-Children from their biological parents' custody proximately caused the injuries described in this Complaint.

194. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT IV: NEGLIGENT HIRING AND RETENTION AND SUPERVISION
### (Against Cherokee County)

195. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

196. Defendant Cherokee County owed a duty to its residents and citizens to ensure that its agents and employees acted pursuant to applicable constitutional and statutory mandates and all applicable state and federal laws.

197. Defendant Cherokee County owed a duty of care to its citizens to hire a competent and qualified Director of Social Services.

198. Defendant Cherokee County owed a duty of care to its citizens to hire a Director of Social Services who was well-versed and trained in all applicable federal and state policies and laws in the performance of her duties.

199. Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and responsibility for doing so, had a duty to ensure that the Director of Social Services discharged the director's duties pursuant to applicable constitutional and statutory mandates.

200. At all times relevant, Director Palmer did not have the requisite qualifications to be the Director of Cherokee County Social Services, as set out by the North Carolina Office of State Human Resources.

201. At all times relevant, Director Palmer did not have the training or experience to perform the duties required as a Director of Social Services in North Carolina.

202. Defendant Cherokee County, despite being aware of Defendant Palmer's lack of qualifications, hired her for the position of Cherokee County Director of Social Services. To do so, Cherokee County sought and obtained a waiver from NCDHHS to hire Palmer, despite her lack of qualifications.

203. Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and responsibility for doing so, failed to adequately oversee Defendant Palmer and other Directors of Social Services.

204. At all relevant times, Cherokee County had a Social Services Board, which had oversight authority over the County's Department of Social Services.

    a. At all relevant times, at least one County Commissioner served on the County Board of Social Services and was aware, or should have been aware, of the conduct of Defendant Lindsay.

    b. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had a duty imposed by law to ensure that Social Services employees of the County complied with all applicable policies, procedures, and state and federal laws, including but not limited to, laws related to the taking of minor children from their parents.

    c. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had actual knowledge, through an NCDHHS audit, that the Cherokee County Department of Social Services:

        i. Was grossly understaffed;

        ii. Had an unacceptable social worker/open case ratio;

iii. Was not being given adequate supervision by the director; and

iv. Was otherwise failing to provide adequate social services in compliance with law and policy.

205. Despite the presence of a County Commissioner serving on the Social Services Board and the awareness of the deficiencies in the services provided by the Department of Social Services, the County failed to exercise its oversight authority over the respective directors in any way.

206. The use of unlawful CVAs and POAs, FSAs, Safety Plans, and other similar documents has occurred for many years and over the tenures of multiple directors.

207. At no point during the time that the CVAs and POAs, FSAs, Safety Plans, and other similar documents were being used to remove children from the custody of their biological parents did Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and responsibility for doing so, properly determine that Social Services employees of Cherokee County under the supervision, direction, and authority of the then-incumbent Director of Social Services were following the law. Cherokee County and the persons responsibility for supervising the Social Services employees failed to discover that the then-incumbent directors of social services were using the unlawful agreements, nor did they take steps to correct the unlawful policies and practices being used by the Cherokee County DSS.

208. Cherokee County's failure to act and failure to oversee the then-incumbent Director of Social Services and prevent or overturn the implementation of their unlawful and unconstitutional policies constitutes negligence in the hiring and retention and supervision of these personnel.

209. Cherokee County's failure to adequately oversee the then-incumbent Director of Social Services and thereby prevent or overturn the unlawful and unconstitutional policies, or at a minimum attempt to remove the Director of DSS from her office, constitutes deliberate indifference to the constitutional rights of the Plaintiffs.

210. As a direct and proximate cause of Defendant's negligence, as set forth herein, the Plaintiffs have suffered damages in excess of $25,000.00.

**COUNT V: GROSS NEGLIGENT HIRING AND RETENTION AND SUPERVISION**

**(Against Cherokee County)**

211. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

212. Defendant Cherokee County owed a duty to its residents and citizens to ensure that its agents and employees acted pursuant to applicable constitutional and statutory mandates and all applicable state and federal laws.

213. In addition, or in the alternative, Cherokee County was grossly negligent in its hiring and retention and supervision of Palmer, Crawford and Davis.

214. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

215. Defendant Cherokee County's gross and utter failure to make an inquiry into and respond appropriately to the unlawful conduct described throughout this Complaint over a period of many years shows deliberate indifference to the rights of the Plaintiffs and constitutes willful and wanton conduct and shocks the conscience.

216. As a result of this gross failure to exercise its duty of care, Cherokee County's failure to discharge any DSS Director who permitted the use of these CVAs, POAs, and substantially similar documents proximately caused the injuries described in this Complaint.

217. Defendant Cherokee County was grossly negligent in its failure to properly oversee its Director of Social Services from 1998 through 2017.

218. Further, Defendant Cherokee County was deliberately indifferent to the acts, or failures to act by the various Directors of Social Services.

219. As a direct and proximate cause of Defendant's negligence, as set forth herein, the Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT VI: NEGLIGENT MISREPRESENTATION

**(Against Palmer and Lindsay, in their individual and official capacities and against Crawford and Davis in their official capacities)**

220. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

221. Defendants or Social Services employees of Cherokee County, acting under their authority and direction, made statements to Adult Plaintiffs regarding the legality of the CVAs and POAs, FSAs, Safety Plans and other similar documents and the impact that signing such a document would have on them and their children.

222. Defendants made or caused to be made, material misrepresentation and/or misleading statements to Adult Plaintiffs, as described above.

   a. These misrepresentations were made negligently, and without regard for their truth. Defendants intended their misrepresentations to be relied upon by Adult Plaintiffs.

   b. Adult Plaintiffs, in fact, reasonably relied on Defendants' representations in executing the CVAs and POAs, FSAs, Safety Plans and other similar documents.

223. Defendants failed to exercise reasonable care and competence in communicating the material facts to Adult Plaintiffs.

224. Adult Plaintiffs actually and reasonably relied upon the false information and/or material facts not disclosed by Defendants, and Adult Plaintiffs' reliance was justified as, under the same or similar circumstances, a reasonable person or party, in the exercise of ordinary care for his or her own welfare would have either relied on the negligent misrepresentations or would not have discovered them.

225. Adult Plaintiffs' reliance proximately caused them to suffer damages.

226. As a proximate cause of Defendants' negligent misrepresentations, Adult Plaintiffs have suffered damages in excess of $25,000.00.

### COUNT VII: NEGLIGENT SUPERVISION

### (Against Palmer in her individual and official capacity and against Crawford, and Davis in their official capacities)

227. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

228. Chapter 7B of the General Statutes clearly states that it "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that *protect the constitutional rights of juveniles and parents.*" N.C. Gen. Stat. § 7B-100(1) (emphasis added).

229. Each Defendant had a duty to ensure that she established social services policies for Cherokee County that protected the constitutional rights of juveniles and parents during their respective tenures of the Director of Social Services for Cherokee County.

230. The three directors (Palmer, Crawford, and Davis) served as the Cherokee County Director of Social Services from 1999 through the end of 2017, the time period during which the unlawful CVAs were used, upon information and belief.

231. Plaintiffs are informed and believe that the use of CVAs continued from 1998 through 2017. Plaintiffs have provided evidence in this Complaint in the form of sworn testimony establishing that the use of CVAs has spanned the tenures of three Directors of Social Services for Cherokee County:

    a. David Hughes testified during the *Mathieu* trial that Social Services employees of Cherokee County had located CVAs that go back 10 years (to 2008), a time period that encompasses the tenures of Defendants Palmer, Crawford, and Davis.

    b. David Hughes further testified that those CVAs only represented the ones that they had found up to that point, but that files were missing from the DSS records room.

    c. Defendant Lindsay testified during the *Mathieu* trial that he started using the CVAs in 2007 or even earlier, again encompassing the tenures of Defendants Palmer, Crawford and Davis.

232. Defendants had a duty to supervise the social workers, supervisors, attorney, and other Social Services employees of Cherokee County to ensure that their actions did not violate the constitutional rights of any juveniles and parents.

233. Defendants had a duty to establish protective services for juveniles alleged to be abused, neglected, or dependent. N.C. Gen. Stat. § 7B-300.

234. Defendants had a duty to make a prompt and thorough assessment of a complaint that a juvenile within Cherokee County is abused, neglected, or dependent. N.C. Gen. Stat. § 7B-302(a).

235. If, in the course of this assessment, Defendants determined that removal of the juvenile from the child's home is necessary for the protection of the juvenile, the Director is required to "sign a petition seeking to invoke the jurisdiction of the court for the

juvenile's protection." N.C. Gen. Stat. § 302(c).

236. As a final policymaker and final supervisor over all Social Services employees of Cherokee County, Defendants had a duty to ensure that the Social Services employees of Cherokee County acted pursuant to applicable constitutional and statutory mandates.

237. Defendants failed to exercise their respective supervisory authority and thereby breached these duties.

238. Defendants failed to make any inquiry into and respond appropriately to the unlawful conduct described throughout this Complaint over a period of many years.

239. Defendants failed to supervise their employees to ensure that a petition seeking to invoke the jurisdiction of the juvenile court was filed when removal of a juvenile from his/her home was deemed appropriate for the juvenile's protection.

240. These failures on the part of Defendants to discharge their duties of care proximately caused the injuries described in this Complaint.

241. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT VIII: GROSS NEGLIGENT SUPERVISION

### (Against Palmer in her individual and official capacity and Crawford, and Davis in their official capacities)

242. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

243. Each Defendant had a duty to ensure that she established social services policies for Cherokee County that protected the constitutional rights of juveniles and parents during their respective tenures are Director of Social Services for Cherokee County.

244. The three directors (Palmer, Crawford, and Davis) served as the Cherokee County Director of Social Services from 1999 through the end of 2017, the time period during which the unlawful CVAs were used, upon information and belief.

245. Plaintiffs are informed and believe that use of CVAs continued from 1998 through 2017. Plaintiffs have provided evidence in this Complaint in the form of sworn testimony establishing that the use of CVAs has spanned the tenures of three Directors of Social Services for Cherokee County:

   a.   David Hughes testified during the *Mathieu* trial that Social Services employees

    of Cherokee County had located CVAs that go back 10 years (to 2008), a time period that encompasses the tenures of Defendants Palmer, Crawford, and Davis.

    b.  David Hughes further testified that those CVAs only represented the ones that they had found up to that point, but that files were missing from the DSS records room.

    c.  Defendant Lindsay testified during the *Mathieu* trial that he started using the CVAs in 2007 or even earlier, again encompassing the tenures of Defendants Palmer, Crawford and Davis.

246. Defendants had a duty to supervise the social workers, supervisors, attorney, and other Social Services employees of Cherokee County to ensure that their actions did not violate the constitutional rights of juveniles and parents.

247. Defendants had a duty to establish protective services for juveniles alleged to be abused, neglected, or dependent. N.C. Gen. Stat. § 7B-300.

248. Defendants had a duty to make a prompt and thorough assessment of a complaint that a juvenile within Cherokee County is abused, neglected, or dependent. N.C. Gen. Stat. § 7B-302(a).

249. In the alternative, Defendants' conduct was done in reckless disregard for the rights of the Plaintiffs. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

250. Defendants were grossly negligent in her failure to properly oversee the Social Services employees of Cherokee County, who improperly removed the Plaintiff-Children from the custody of their Plaintiff-Parents.

251. Each Defendant Director's conduct was a gross violation of the Plaintiffs' constitutionally protected rights and shows deliberate indifference and constitutes willful and wanton conduct that shocks the conscience.

252. These gross failures on the part of each defendant Director to discharge her duties of care proximately caused the injuries to Plaintiffs described in this Complaint.

253. As a proximate cause of Defendants' gross negligence, Plaintiffs have suffered

damages in excess of $25,000.00.

## COUNT IX: ACTUAL FRAUD

### (Against Lindsay and Palmer in their individual capacities)

254. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

255. The statements Defendants made to the Parent-Plaintiffs described above regarding the CVAs and POAs, FSAs, Safety Plans and other similar documents were false, misleading, and material at the time they were made,

256. Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction of the Defendants, knew these statements were false at the time they were made.

257. Particularly, Plaintiffs plead that Defendants falsely represented to each Parent-Plaintiff that the CVAs and POAs, FSAs, Safety Plans and other similar documents

    a. Carried the force of law;

    b. Were enforceable at law;

    c. Were lawful to make; and

    d. Defendants made other material and false statements regarding CVAs to induce Parent-Plaintiffs to sign them and thereby facilitate the unlawful taking of their children in violation of the Parent-Plaintiffs constitutional and statutory rights.

258. Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants, made these false statements with the intention that the Parent-Plaintiffs would rely on these misrepresentations and sign the CVAs and POAs, FSAs, Safety Plans and other similar documents.

259. Parent-Plaintiffs did, in fact, rely on these false statements when they signed the CVAs and POAs, FSAs, Safety Plans and other similar documents.

260. No provision of law exists within the North Carolina General Statutes authorizing any Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants, to draft or otherwise effect the CVAs and POAs, FSAs, Safety Plans and other similar documents.

261. The misrepresentations were made willfully and wantonly, and with intention of coercing and/or otherwise deceiving the Parent-Plaintiffs into abandoning their rights

as parents.

262. Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction of the Defendants, made false representations to Parent-Plaintiffs that were reasonably calculated to deceive. Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction of the Defendants, made false representations with the intent to deceive and with the intent that the Parent-Plaintiffs would act on false statements.

263. Parent-Plaintiffs were, in fact, deceived by Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants.

264. Parent-Plaintiffs reasonably relied on Defendants or Social Services employees of Cherokee County, who were acting with the authority of and at the direction of the Defendants' representations, when they signed the CVAs and POAs, FSAs, Safety Plans and other similar documents. Under the same or similar circumstances, a reasonable person, in the exercise of ordinary care for his or her own welfare, would have relied on the false representations.

265. Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants, have acted intentionally and with malice toward Parent-Plaintiffs and/or in reckless disregard of Parent-Plaintiffs' rights.

266. The Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants, at the times relevant, improperly billed either local, state, tribal or federal government funding sources while engaging in the CVA, POA, FSA, Safety Plan or other similar document process with the Parent-Plaintiffs.

267. Plaintiffs have suffered damages proximately caused by Defendants' false representations.

268. As a result of Defendants' deceit, fraud and fraudulent inducement, Plaintiffs are entitled to a judgment against Defendants for their damages, plus attorneys' fees, in an amount in excess of $25,000.00.

## COUNT X: CONSTRUCTIVE FRAUD

### (Against Lindsay and Palmer in their individual capacities)

269. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

270. "A constructive fraud claim . . . is based on a confidential relationship rather than a specific misrepresentation. The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances '(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678-79 (1981) (quoting *Rhodes v. Jones,* 232 N.C. 548-49, 61 S.E. 2d at 725 (1950)).

271. Upon information and belief, Cherokee County Social Services employees had a relationship of trust and confidence with the Parent-Plaintiffs prior to or during the course of obtaining the Parent-Plaintiffs' signatures on the CVAs and POAs, FSAs, Safety Plans and other similar documents.

   a. In many instances, the Defendants had prior working history involving the minor children and parents who signed the CVAs and POAs, FSAs, Safety Plans and other similar documents.

   b. In many instances, the Parent-Plaintiffs-, were in a position of mental, physical, economic, or emotional vulnerability when they were coerced into giving up their children by and through the use of a CVA, POA, FSA, Safety Plan and other similar documents.

   c. Upon information and belief, in many instances, Social Services employees of Cherokee County, acting under the authority and direction of the Director of Social Services, told Parent-Plaintiffs that, if they didn't sign the agreement, their children would be sent to foster care, possibly adopted, or removed from them so that the Parent-Plaintiffs would never have any kind of contact or ever see their children again.

   d. Social Services employees of Cherokee County, acting with the authority of and at the direction of the then-incumbent Director of Social Services, represented themselves as acting within the law when presenting the CVAs to the Parent-Plaintiffs; these representations were believed by the Parent-Plaintiffs and they

reasonably relied upon them. A reasonable person in the Parent-Plaintiffs' positions would have reasonably relied on these representations.

e.    Social Services employees of Cherokee County, acting with the authority of and at the direction of the then-incumbent Director of Social Services, represented that they had the authority to remove their children when presenting the CVAs to the Parent-Plaintiffs; these representations were believed by the Parent-Plaintiffs and they reasonably relied upon them. A reasonable person in the Parent-Plaintiffs' positions would have reasonably relied on these representations.

f.    The Parent-Plaintiffs were not told of their right to counsel, were not appointed counsel, and were not informed of the requirements of law that DSS attempt reunification after lawful removal.  Consequently, the Parent-Plaintiffs had no reason to believe the state of the law was anything other than that as represented by Social Services employees of Cherokee County, acting with the authority of and at the direction of the then-incumbent Director of Social Services. These representations were believed by the Parent-Plaintiffs and they reasonably relied on them. A reasonable person in the Parent-Plaintiffs' positions would have reasonably relied on these representations.

g.    Once the minor children were removed, there was no follow-up by any Social Services employee of Cherokee County to monitor the health, well-being or care of any minor child.

h.    There was no follow-up with the Parent-Plaintiffs to see if there had been any substantive changes in their life or if they had contact of any kind with the minor children.

i.    In a declaratory judgment action involving Plaintiff Greenlee, the District Court of Cherokee County specifically found the existence of a confidential, special relationship between Cherokee County Social Services employees and Greenlee at the time Greenlee executed her CVA, determining that a reasonable person in Greenlee's position would have relied on the false representations made by the Cherokee County Social Services employee. **EXHIBIT F**.

272. Cherokee County Social Services employees used coercive tactics aimed toward the Parent-Plaintiffs to obtain signatures on the CVAs and POAs, FSAs, Safety Plans and other similar documents applicable to their children.

273. The Parent-Plaintiffs relied on the position of trust and authority occupied by Cherokee County Social Services employees and other agents and employees of the County when they acquiesced to the Defendants' attempts to obtain their signatures on the CVAs and POAs, FSAs, Safety Plans and other similar documents.

274. The Parent-Plaintiffs relied on the representations made by the Social Services employees of Cherokee County because they believed those Social Services employees were obligated to be truthful and not misrepresent the state of the law to them. A reasonable person in the Parent-Plaintiffs' positions would have reasonably relied on this position of trust that these government and state actors occupied.

275. The Social Services employees of Cherokee County who made these false, coercive, and fraudulent misrepresentations to the Parent-Plaintiffs were acting with the authority of and at the direction of the then-incumbent Director of Social Services for Cherokee County and/or Defendant Lindsay, who held a position of authority.

276. The Parent-Plaintiffs were injured as a proximate case of Defendants' conduct.

277. The Defendants unlawfully billed local, state, tribal or federal government funding sources while engaging in the unlawful CVA or POA process with the Parent-Plaintiffs.

278. As a proximate cause of Defendants' conduct, Plaintiffs are entitled to recover damages in excess of $25,000.00.

## COUNT XI: DEPRIVATION OF RIGHTS 42 U.S.C. § 1983
### (Against Palmer and Lindsay in their individual and official capacities and against Crawford and Davis in their official capacities)

279. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

280. Defendant Lindsay and Defendant Palmer are "persons" as that term is used in 42 U.S.C. § 1983.

281. At all relevant times, Defendants were acting under color of state law.

282. The CVAs and POAs, FSAs, Safety Plans, and other similar documents were entered into in the course and scope of Cherokee County's child welfare, family services, and child protective services efforts. However, the facilitation of these agreements falls outside the duties and responsibilities of Cherokee County, its Directors of Social Services, and Defendant Lindsay imposed by, *inter alia*, N.C. Gen. Stat. §§ 7B-108A, -108A(14), -108A(18) and other applicable statutes and laws.

283. At no time after the removal of Children-Plaintiff did any of the Defendants, or Social Services employees of Cherokee County acting with the authority of and at the direction the Defendants, or health or community workers, review the placement as required by N.C. Gen. Stat. § 7B-100 *et. seq.*, or check on the health, safety, or welfare of the Children-Plaintiffs.

284. At all times relevant, Defendant Cherokee County's social services policies were established by the respective Director, who acts under the authorization of North Carolina law.

285. At all relevant times, the respective Director was further responsible for the oversight, supervision, policies, and procedures regarding implementation of social services by both Cherokee County policy and North Carolina law.

286. Pursuant to N.C. Gen. Stat. § 7B-100 *et seq.* and other relevant North Carolina statutes, including Chapters 108A and 153A*,* the respective Director, was at all times relevant to this Complaint, the final policymaker with regard to all investigative and placement activities conducted by DSS staff, subordinates, attorney, and employees.

287. The respective Director, at all times relevant to this Complaint, was acting under the color of state law in her individual and official capacities.

288. At the times relevant, all Social Services employees of Cherokee County were acting under color of state law and with the authorization of and direction of the respective county Director of Social Services and Defendant Lindsay.

289. At all times relevant, each defendant Director, supervisor, social worker, staff employee, employee of Cherokee County and Defendant Lindsay were health and community workers, acting within the scope of their employment.

290. At the times relevant, all named Defendants were acting under color of state law in his/her individual and official capacities when engaged in the unlawful conduct described throughout this Complaint.

291. At the times relevant, the Defendants Palmer, Crawford and Davis, as well as supervisors, social workers, staff employees, Social Services employees of Cherokee County, health and community workers and Defendant Lindsay were acting within the scope of their employment.

292. Children, including Children-Plaintiffs, have a right under the Constitution of the United States, the Constitution of North Carolina, and the laws of the United States and North Carolina to live with their parent or parents free from involvement and interference of Cherokee County, absent proof by clear, cogent and convincing evidence of abuse, neglect, or dependency being produced in a court of law.

293. Parents and children including the Plaintiffs, have the right to live together as a family without government interference.

294. The only way a social worker, agent or the Director of a DSS may lawfully remove a child from a biological parent's custody under North Carolina law is by clear, cogent and convincing evidence, based on allegations of abuse, neglect or dependency.

295. Only a Court Order resulting from due deliberation, duly signed by a judge, and filed with the Court, can be used to interfere, interrupt, or prevent the relationship between a parent and a child, including the Plaintiffs in this action.

296. There is no judicial authorization for any CVA or other document described herein that removed a child from a lawful parent's custody.

297. At the times relevant, the Defendants, as set forth herein, lacked any legal right to remove the Children-Plaintiffs from the custody of a lawful parent or guardian.

298. At the times relevant, there existed no legal authority for the Defendants to remove Children-Plaintiffs from the custody of a lawful parent or guardian.

299. At no relevant time were the Children-Plaintiffs provided counsel, the appointment of a guardian *ad litem*, or an attorney for a guardian *ad litem*, as required by North Carolina law.

300. The conduct on behalf of the Defendants toward Plaintiffs shocks the conscience. At no time was Defendants' conduct supported in law or fact.

301. The right to parent one's child is enshrined in the Due Process Clause of the 14th Amendment to the Constitution of the United States and the Law of the Land Clause in Article I, Section 19 if the North Carolina Constitution.

302. The Defendants' conduct violated clearly established constitutional rights of any person who had a lawful right to the custody of Children-Plaintiffs, and these rights were clearly established at the time these violations occurred.

303. Defendants' actions deprived all Plaintiffs of their constitutional rights and violated their rights to both procedural and substantive due process.

304. The actions of the Cherokee County Social Services employees resulted an unlawful seizure of the Children-Plaintiffs, in violation of the Fourth Amendment to the Constitution of the United States.

305. The actions of the Cherokee County Social Services employees unlawfully deprived Children-Plaintiffs of their right to associate with any lawful parent or guardian in violation of the First Amendment to the Constitution of the United States.

306. The actions of the Cherokee County Social Services employees deprived all Plaintiffs of procedural due process by interfering with their right to freedom of association in violation of her respective rights under the First Amendment to the Constitution of the United States.

307. The actions of the Cherokee County Social Services employees deprived all Plaintiffs of substantive due process in that they shock the conscience of the Court.

   a. The use of the CVA was intended to (and did) allow Cherokee County and its Social Services employees to evade judicial review of their coercive and unlawful action and to separate Plaintiffs without lawful authority.

   b. These actions by the Cherokee County Social Services employees violated all Plaintiffs' rights to substantive due process in violation of the Fourteenth Amendment of the Constitution of the United States.

308. Defendants each engaged in conduct in furtherance of the object of this conspiracy and induced others to engage in conduct in furtherance of those conspiracies.

309. Defendants engaged in such conduct in bad faith and with intentionally, recklessly, and with callous disregard for, and deliberate indifference to all Plaintiffs' rights.

310. As a direct and foreseeable consequence of this deprivation:

    a. Children-Plaintiffs were removed against their will and without due process of law;

    b. Children-Plaintiffs lost the services, care, protection, and assistance of their parents and potential future services, care, protection, and assistance of their Parent-Plaintiffs;

    c. Children-Plaintiffs lost the services, care, protection, and assistance of any lawfully appointed guardian and potential future services, care, protection, and assistance of a lawfully appointed guardian;

    d. Such other damages as may be proven at trial.

311. The CVA violated Children-Plaintiffs' rights guaranteed under the U.S. Constitution, including but not limited to:

    a. The agreement is not permitted by, did not comply with, and is contrary to the provisions of N.C. Gen. Stat. § 7B-100 *et. seq.,* of the North Carolina General Statutes (which is the means by which the constitutional rights of parents and juveniles are protected in North Carolina, *see, inter alia,* N.C. Gen. Stat. § 7B- 100(1)) because, *inter alia*:

      i. The agreement did not allow Children-Plaintiffs specified minimum visitation with Parent-Plaintiffs, in violation of N.C. Gen. Stat. § 7B-905.1.

      ii. The agreement failed to follow the mandate of N.C. Gen. Stat. § 7B- 507(a), which provides that any order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services (whether it is an Order for non-secure custody, continued non-secure custody, a dispositional Order, or a review Order):

        1. Shall contain a finding the juvenile's removal or continuation in or return to the juvenile's home would be contrary to the juvenile's best interest;

        2. Shall contain findings as to whether the county Department of Social Services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined that such efforts are not required and shall cease;

3. Shall contain findings as to whether a county Department of Social Services should continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile;

4. Shall specify that the juvenile's placement and care is the responsibility of the county Department of Social Services and that the agency is to provide or arrange for the foster care or other placement of the juvenile; and

5. May provide for services or other efforts aimed at returning the juvenile to a safe home or at achieving another permanent plan for the juvenile.

iii. The agreement violates N.C. Gen. Stat. § 7B-100 *et. seq.,* which does not authorize Cherokee County or its Social Services employees to enter into or facilitate private custody agreements, powers of attorneys, file private custody actions, or take any actions regarding custody of a minor child without judicial action.

1. These CVAs, POAs, FSAs, Safety Plans, or other similar documents are more similar to a private parental custody agreement than a custody order entered under the authority of N.C. Gen. Stat. § 7B- 100 *et. seq.*

2. These CVAs, POAs, FSAs, Safety Plans, or other similar documents, while similar to a private parental custody agreement, are not authorized under N.C. Gen. Stat § 50-13.1 *et seq.* or N.C. Gen. Stat § 50A-101 *et seq.*

3. These CVAs, POAs, FSAs, Safety Plans, or other similar documents, though appearing to be similar to a private parental custody agreement, are prohibited by law.

4. Under N.C. Gen. Stat § 7B-905(b), a dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker shall direct that a review hearing (as required by N.C Gen. Stat § 7B-906) be held with 90 days from the date of the dispositional hearing.

iv. It was not executed under the supervision of the District Court of Cherokee County, North Carolina, which possesses original and exclusive jurisdiction over all juveniles alleged to be abused, neglected, dependent, undisciplined,

or delinquent within the County. *See* N.C. Gen. Stat. § 7B- 200, 7B-1600, and 7B-1601.

> v. It was not executed under the supervision of the District Court of Cherokee County, North Carolina, which possesses original and exclusive jurisdiction over all child custody actions. *See* N.C. Gen. Stat. § 50A- 201(b) and N.C. Gen. Stat § Chapter 50-13.1 *et seq.*,
>
> vi. It was not reviewed by a court official or guardian *ad litem* for the minor child and was not filed in the minor child's juvenile action court file.
>
> vii. North Carolina District Court has the original and exclusive jurisdiction over all matters regarding all minor children within the state (excluding adoptions).

b. The CVAs, POAs, FSAs, Safety Plans, or other similar documents  failed to follow the North Carolina Rules of Practice and Rules of Civil Procedure by *inter alia*:

> i. They were not signed by a judge or filed with the Cherokee County Clerk of Court's office.
>
> ii. Cherokee County DSS did not file any motion, notice on for hearing, or in any other way bring before or otherwise seek court approval or oversight in entering into the CVAs.

c. The execution of the CVAs, POAs, FSAs, Safety Plans, or other similar documents, was lacking in any legal safeguards for the rights of Parent-Plaintiffs or Children-Plaintiffs, as required by N.C. Gen. Stat. § 7B-100 *et. seq.,* and the Constitutions of the United States and the State of North Carolina.

d. The CVAs, POAs, FSAs, Safety Plans, or other similar documents often contained no provisions to revoke or otherwise modify the terms contained therein and contained no provision to allow judicial review or ratification at any time.

e. The CVAs, POAs, FSAs, Safety Plans, or other similar documents  was used to deprive the Plaintiffs of the right to procedural due process and substantive due process.

f. Other ways that shall be ascertained through discovery and proven at trial.

312. The CVA was drafted and formatted in such a manner as to resemble a Court Order.

313. Each Defendant Director, and others who were in the position to establish and promulgate the policies and official practices of Cherokee County were aware of, approved, and directed the use of the CVA and substantively similar "agreements."

314. Defendant Lindsay drafted multiple CVAs, POAs, FSAs, Safety Plan or other similar documents involving many parents and children over the course of multiple years.

   a. The CVAs, POAs, FSAs, Safety Plans, or other similar documents were prepared, propagated, and produced by CCDSS based upon Defendant Lindsay's advice, drafting, and/or counsel. The CVA was designed to be a bilateral "agreement" requiring the signatures of both the parents and the recipient adults.

   b. Upon information and belief, Defendant Lindsay, Defendant Palmer, and/or Cherokee County are in possession of electronic copies of many, if not all, of the CVAs, POAs, FSAs, Safety Plan or other similar documents utilized by the Defendants.

      i. Cherokee County, its Social Services employees, and health and community workers of Cherokee County are liable for their tortious actions, particularly in light of the deliberate indifference of Cherokee County, and its employees, its agents and other defendants yet to be determined through the discovery process.

      ii. Cherokee County, its Directors of Social Services and other policy makers are liable for the direct activity and actions of the DSS and its officials and employees through their individual acts and actions, as well as the official policies and *de facto* policies.

      iii. These unlawful "agreements" were crafted and utilized to unlawfully take minor children from the custody of their parents with the knowledge and approval of the Cherokee County DSS Director or Defendant Lindsay or both.

315. The Defendants combined, confederated, and agreed to act in conformity with their unlawful patterns, customs, and policies. Each member of the conspiracy shared the same

conspiratorial objective to deprive the Plaintiffs of their federally protected rights resulting in the harm and damages that the Plaintiffs have incurred.

316. The unlawful conduct described throughout the Complaint demonstrates that:

    a. Defendants established as official policy or custom the use of CVAs to unlawfully remove minor children and coerce parents to surrender custody of children in violation of their rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States

    b. Defendants maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning the improper, illegal, and unconstitutional techniques by Cherokee County Social Services employees.

    c. Defendants demonstrated deliberate indifference to the unlawful, unconstitutional, and unconscionable actions of their delegated policymakers, and further failed to adequately train, supervise, or discipline Social Services employees in connection with protecting and ensuring the constitutional rights of the Plaintiffs.

317. As a direct and proximate cause of Defendants' negligence, as set forth herein, the Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT XII: DEPRIVATION OF RIGHTS 42 U.S.C. § 1983
### (Defendant Cherokee County - *Monnell v. Dep't of Social Services*, 436 U.S. 658)

318. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

319. The Cherokee County Department of Social Services is a constituent department of Cherokee County. Cherokee County is governed by a Board of Commissioners, which has oversight over all county programs and departments.

320. The Director of Social Services for Cherokee County, pursuant to N.C. Gen. Stat. § 7B-100 *et. seq.,* and other relevant North Carolina statutes, including Chapters 108A and 153A, is the final policymaker for all policies and procedures established to govern the operations and activities of the Cherokee County DSS.

321. Defendant Palmer was the Director of Social Services for Cherokee County on an interim basis from November 30, 2009 until July 2010, and again from August 1, 2015 until

March 23, 2016. Palmer was the permanent Director of Social Services from March 23, 2016 until June 11, 2018. Her predecessors served during their respective tenures.

322. While a Director may rely on a Department attorney for advice, the Director, is the final policy maker for all policies and procedures established to govern the operations and activities for the Department of Social Services.

323. The Defendants, as well as unnamed and other as yet unknown supervisors, directors, policymakers, and other responsible individuals are "persons," as defined pursuant to 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), and its progeny.

324. Defendant Lindsay was, at the relevant times, simultaneously the attorney hired to represent Cherokee County in juvenile DSS court proceedings, as well as serving as the attorney for Cherokee County.

    a. Defendant Lindsay was also an advisor to Social Services employees of Cherokee County, including its directors.

    b. Defendant Lindsay was also a policymaker for Cherokee County.

325. Defendants Lindsay, Palmer, Crawford and Davis established as official policy or custom the use of CVAs to coerce biological parents to surrender custody of their children in violation of their rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

326. The fundamental right to familial relations is constitutionally protected.

327. Cherokee County, by and through its final policymaker, maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning the improper, illegal, and unconstitutional techniques used by Cherokee County Social Services employees and Defendant Lindsay.

328. Cherokee County demonstrated deliberate indifference to the unlawful, unconstitutional, and unconscionable actions of their delegated policymakers. Cherokee County failed to adequately train, supervise, or discipline the directors of Social Services as set forth herein in connection with protecting and ensuring the constitutional rights of the biological parents and their children.

329. Because the County Commissioners of Cherokee County and/or the County Board of Social Services and/or the Cherokee County Director of Social Services and/or

Defendant Scott Lindsay were the final policymakers during the past 19 years, their acts or omissions during that time constituted the policy, custom, or pattern and practice of Cherokee County.

330. As the final policymaker for Cherokee County, the County Commissioners of Cherokee County and/or the respective Director of Social Services (Palmer, Davis and Crawford) and/or Defendant Lindsay created, promulgated, and maintained the following policies, customs, or practices that deprived the Plaintiffs of their constitutionally protected rights by:

a. Failing to properly train and supervise Cherokee County Social Services employees with regard to their duties not to (1) fabricate purportedly legal documents, (2) coerce signatures from biological parents whereby they gave up their right to parent, (3) separate a parent from a child, (4) remove a child from his/her family, (5) conceal the CVA process from NCDHSS auditors, (6) intentionally and recklessly failed to follow the procedures as set forth in N.C. Gen. Stat. § 7B- 100 *et. seq.,* (7) ignore the policies and guidelines as set forth by NCDHHS as it relates to safety plans, removal procedures, maintaining contact between parents and children, providing a reunification plan for parents and children and following up on placement of the minor children to ensure their safety, health and essential needs are being adequately met.

b. Encouraging, promoting and condoning Cherokee County Social Services employees to (1) fabricate purportedly legal documents, (2) coerce signatures from biological parents whereby they gave up their right to parent, (3) separate a parent from a child, (4) remove a child from his/her family, (5) conceal the CVA, POA, Family Safety Agreement, Safety Plan and similar processes from NCDHSS auditors. (6) intentionally and recklessly failed to follow the procedures as set forth in N.C. Gen. Stat. § 7B-100 *et seq.,* (7) ignore the policies and guidelines as set forth by NCDHHS as it relates to safety plans, removal procedures, maintaining contact between parents and children, providing a reunification plan for parents and children and following up on placement of the minor children to ensure their safety, health and essential needs are being

adequately met; (8) fostering a climate of impunity for engaging in such unconstitutional conduct.

c.  Creating, promulgating, and maintain a policy, custom, or practice of failing to follow the law as set forth in N.C. Gen. Stat. § 7B-100 *et seq.,* the policies, procedures and guidelines as set forth by NCDHHS and other behaviors, conduct or practices to be learned through discovery and proved at trial.

331. The wrongful acts and omissions that deprived the Parent-Plaintiffs of custody of their respective Children-Plaintiffs and their right to parent occurred pursuant to Cherokee County's policies, customs, patterns, practices and conduct.

332. The policies, practices, customs and patterns of conduct of Cherokee County were the direct and proximate cause of the violation of all Plaintiffs' constitutional rights, as described throughout this Complaint, and also the proximate cause of the damages to all Plaintiffs described throughout this Complaint.

333. As a direct and proximate cause of Defendant's negligence, as set forth herein, the Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT XIII: RESPONDEAT SUPERIOR
### (Against Cherokee County for state law claims only)

334. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

335. Liability for the tortious conduct and constitutional violations by the Defendants in their individual and professional capacity are imputed to Cherokee County, a governmental subdivision of the state of North Carolina, by operation of the doctrine of respondeat superior.

336. The conduct of Defendants Palmer, Lindsay, Crawford, Davis and all Cherokee County Social Services employees, acting within their authority and at their direction, in their individual and official capacities, was undertaken within the course and scope of their employment with Cherokee County and in the furtherance of Cherokee County and its Department of Social Services.

337. The Defendants owed a statutory duty to all Plaintiffs to follow state law, act consistently with state policies, and not act in ways so as to infringe on the rights and privileges of

parents and minor children, including Plaintiffs, under the Constitutions of the United States and the State of North Carolina.

338. Defendants' use of the unlawful CVA interrupted, interfered with, and destroyed the parental relationship and bond of between parents and their children, and caused irreparable harm, injuries, emotional distress, mental anguish and other damages yet to be determined by the Plaintiffs.

339. As a direct and proximate cause of Defendant's negligence, as set forth herein, the Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT XIV: CIVIL OBSTRUCTION OF JUSTICE
### (Against Defendants Cherokee County, Palmer and Lindsay)

340. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

341. Defendants intentionally, willfully, and maliciously engaged in an unlawful pattern of conduct by coercing parents into signing CVAs or substantively similar agreements.

342. Defendants further used the CVAs or substantively similar agreements to avoid judicial supervision and oversight of their unlawful activities and to deny parents their rights to access to justice and to access open courts.

343. Defendants obstructed the administration of public and legal justice by means of their unlawful actions as described throughout this Complaint.

344. Plaintiffs were harmed by the unlawful actions taken by the Defendants in their attempt to obstruct justice as set forth here and elsewhere in the Complaint.

345. Upon information and belief documentation relating to several CVAs were destroyed by CCDSS.

346. Upon information and belief documentation relating to CVAs were destroyed by Defendant Palmer either directly or by her direction after preservation letters were sent to both her and the County.

347. Upon information and belief documentation relating to CVAs were destroyed by Defendant Palmer either directly or by her direction after the District Court of Cherokee County ordered that no such documents were to be destroyed.

348. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages in excess of $25,000.00.

## COUNT XV: PUNITIVE DAMAGES
### (Against Lindsay and Palmer in their individual capacities)

349. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

350. Defendants, by their actions as set forth in this Complaint, have acted intentionally, willfully, wantonly, and maliciously in causing the injuries complained of.

351. Defendants' intentional, willful, wanton, and malicious behavior has caused injuries to Parent-Plaintiffs as set forth in this Complaint, including:

   a. Violating their rights under the Constitutions of the United States and North Carolina;

   b. Defrauding them;

   c. Obstructing justice and denying them access to due process of law;

   d. Damage to the safety, well-being, mental health, and familial cohesiveness of the Parent-Plaintiffs and , Children-Plaintiffs;

   e. As a direct and foreseeable consequence of Defendants' conduct, Parent-Plaintiffs suffered injuries, including but not limited to, pain and suffering, mental anguish, emotional trauma and distress, and were prevented from providing for the care, custody, and control of their minor children during valuable and critical times of minor children's formative years.

   f. As a direct and foreseeable consequence of Defendants' conduct, the Children-Plaintiffs suffered injuries, including but not limited to, pain and suffering, mental anguish, emotional trauma and distress from being removed from their parents.

352. The Defendants' intentional, willful, wanton, malicious and oppressive conduct is the proximate cause of injuries sustained by the Plaintiffs. As a result, Plaintiffs are entitled to punitive damages under N.C. Gen. Stat. § 1D-1 *et seq.*

## COUNT XVI: ATTORNEY'S FEES
### (Against All Defendants)

353. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

354. Plaintiffs are entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988(b) and other applicable federal and state statutes related to the allegations as set forth herein.

355. In addition to compensatory and punitive damages, Plaintiffs seek to recover their attorneys' fees from Defendants.

## COUNT XVII: INJUNCTIVE RELIEF
### (Against Cherokee County and Palmer)

356. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

357. The use of CVAs, POAs, FSAs, Safety Plans or other similar documents as set forth throughout this Complaint is in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

358. Use of the CVAs, POAs, FSAs, Safety Plans or other similar documents is the official policy of Cherokee County, as promulgated by its Social Services policy makers.

359. Use of the CVAs, POAs, FSAs, Safety Plans or other similar documents is an accepted and ratified custom and unofficial policy to the extent that it is not an official policy.

360. Use of the CVAs, POAs, FSAs, Safety Plans or other similar documents is known and tolerated by the final policymakers of Cherokee County, such that their failure to take adequate steps to prohibit such use constitutes deliberate indifference to the constitutional rights of the people of Cherokee County, including but not limited to, the Plaintiffs in this action.

361. Upon information and belief, policymakers of Cherokee County deny any wrongdoing or illegality in the use of CVAs, POAs, FSAs, Safety Plans or other similar documents, and are likely to continue using this process in the future.

362. This Court is empowered to issue injunctions to prevent the continuation of this unlawful practice.

363. Plaintiffs pray for the entry of an injunction prohibiting any named Defendant, Cherokee County, or any agent, servant, or employee of Cherokee County from using a CVA, POA, FSA, Safety Plan or other similar document to facilitate a transfer of custody of any minor child, and to restrain all named Defendants, their agents, and those acting in

concert with them, from taking any action to remove a minor child from the custody of his/her biological parent, except through an action filed in the North Carolina General Court of Justice.

**WHEREFORE** All the Plaintiffs by and through undersigned Counsel pray the Court and demand Judgment:

1. For an award to Plaintiffs for injuries and damages, including but not limited to, pain and suffering, compensatory, consequential, punitive and other such damages, as well as interest thereon, in an amount in excess of $25,000.00 to be proven at trial;

2. For an award to Plaintiffs for injuries and damages, including but not limited to, punitive damages, as well as interest thereon, in an amount in excess of $25,000.00 to be proven at trial;

3. Appoint a neutral, qualified third party to do the following, at the expense of Cherokee County:

   a. Conduct a comprehensive audit of all files in the possession of Cherokee County Department of Social Services relating to child protective services from the time that Scott Lindsay provided legal services for DSS to the present to identify all children and parents who have been the victims of Defendants' unlawful policy, practices and procedures of using extrajudicial documents to separate them from their families without use of judicial oversight and the required legal process;

   b. As to the children identified above, provide judicial oversight to determine each child's present status and to determine the necessary and appropriate social services each child needs;

   c. Assess whether the present placement is in the best interests of each child or whether the child should be returned to his/her biological parents.

   d. Report the findings to the appropriate Court under seal, so that the Court may determine the appropriate action that Cherokee County should take with regard to each child;

4. For entry of an order adjudicating the proper placement of each child plaintiff who remains a minor, thereby eliminating the "legal limbo" that the actions of Defendants have inflicted on them.

5. For an injunction prohibiting any named Defendant, Cherokee County, or any agent, servant, or employee of Cherokee County from using a CVA, POA, FSA, Safety Plan or other similar document to facilitate a transfer of custody of any minor child, and to restrain all named Defendants, their agents, and those acting in concert with them, from taking any action to remove a minor child from the custody of his/her biological parent, except through an action and order filed in the North Carolina General Court of Justice.

6. For pre-judgment and post-judgment interest as allowed by law.

7. For an award of attorney's fees and costs as allowable by all applicable laws;

8. For a trial by jury;

9. For an acknowledgement of wrongdoing by the named Defendants and a written apology by each Defendant for the same the Plaintiffs in this matter; and

10. For such other and further relief as the Court may deem just and proper.

This the 6th day of October, 2020.


/s/ David A. Wijewickrama
David A. Wijewickrama
N.C. State Bar No.: 30694
Law Office of David A. Wijewickrama, PLLC
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801
Fax:    828-454-1990

*Attorney for Parents*


/s/ Ronald L. Moore
Ronald L. Moore
N.C. State Bar No.: 9619
Post Office Box 18402
Asheville, NC 28814
Phone: (828) 777-1812
Fax: (828) 253-2717

*Attorney for Children*


/s/ Melissa Jackson
Melissa Jackson
N.C. State Bar No.: 34013
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801

*Attorney for Parents*


/s/ D. Brandon Christian
D. Brandon Christian
N.C. State Bar No.: 39579
3344 Presson Road
Monroe, NC 28112
Phone :(910) 750-2265

*Attorney for Children*

## **CERTIFICATE OF SERVICE**

This is to certify that on October 6, 2020, a copy of the foregoing **SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification to all counsel having made appearances in the case as follows:

Patrick Houghton Flanagan
Cranfill, Sumner & Hartzog, L.L.P.
2907 Providence Road
Suite 200
P.O. Box 30787
Charlotte, NC 28230
704-940-3419
704-332-9994 (fax)
phf@cshlaw.com
*Attorney for Defendant Scott Lindsey*
*in his individual capacity*

John L. Kubis, Jr
Teague Campbell Dennis & Gorham, LLP
22 South Pack Square, Suite 800
Asheville, NC 28801
828-254-4515
828-254-4516 (fax)
jkubis@teaguecampbell.com

*Attorney for Defendant Cindy Palmer*
*in her individual capacity*

Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 South College St., Suite 3500
Charlotte, NC 28202
704 331-4992
704 338-7814 (fax)
sean.perrin@wbd-us.com

*Attorney for Defendants Cherokee County,*
*Cherokee County DSS, Scott Lindsey in his*
*official capacity, and Cindy Palmer in her*
*official capacity*

Submitted by:

/s/ D. Brandon Christian
D. Brandon Christian
N.C. State Bar No.: 39579
3344 Presson Road
Monroe, NC 28112
Phone :(910) 750-2265
*Attorney for Children*